TRAYLOR and Another *v.* HORRALL.

To support the action of trover, there must be proof of property in the plaintiff, possession to have been in the defendant, and a conversion by the defendant.

The *gist* of such action is the conversion; and unless the defendant has had an actual or virtual possession of the goods, he cannot be charged with a conversion of them to his own use.

ERROR to the *Daviess* Circuit Court.

BLACKFORD, J.—Trover by *Horrall* against *Traylor*, *Capehart*, and *Cain*. Plea, not guilty. The only evidence respecting the conversion was as follows: The plaintiff had put his corn into a crib, which he had hired for the purpose of *Kinman*, and which stood on *Kinman's* land. The defendants and some other persons being present where the crib of corn was, *Capehart* offered the corn at public sale, and *Traylor* bid it off at the price of 31 dollars. *Cain* said that he had the officers bound for his money. The plaintiff was also present, and forbid any person from selling or removing the corn,

claiming it to be his. *Cain* afterwards said that he had got his money from *Capehart*. The defendants demurred to the evidence, and agreed that if judgment were rendered for the plaintiff, the Court might assess the damages. The demurrer was sustained as to *Cain*, but there was a judgment against the other defendants for 74 dollars in damages, together with costs.

We are satisfied that the record shows no evidence conducing to prove a conversion in this cause, and that the judgment for the plaintiff is consequently erroneous.

To support the action of trover, there must be proof of property in the plaintiff, possession to have been in the defendant, and a conversion by the defendant. *Buller's* N. P. page 33. The *gist* of the action is the conversion; and unless the defendant has had an actual or virtual possession of the goods, he cannot be charged with a conversion of them to his own use.

In the present cause, it does not appear why the form of a public sale of the corn in question took place. It is not shown that *Capehart*, the alleged seller, had seized the property under any process of law, or that at the time of the sale, or at any other time, he had or pretended to have any possession of it whatever. Neither was there any attempt to prove, that *Traylor*, the purchaser, ever took possession of the property, or exercised any act of ownership over it.

The case of *Bristol* v. *Burt*, 7 Johns. Rep. 254, is referred to by the plaintiff. But the Court there expressly say, that the defendant had exercised the highest and most unequivocal acts of dominion and control over the goods, not only by claiming jurisdiction over them, but by placing armed men near them to prevent their removal. They say further, that the defendant thus detained the goods for several months, and that a charge was therefore brought upon the plaintiff. The Court, in that case, do not appear to have had any idea, that the suit could be maintained without showing that the defendant had intermeddled with the goods, and had for a time excluded the plaintiff from their possession. They rely on *Baldwin* v. *Cole*, 6 Mod. Rep. 212. The plaintiff had there sent his servant with some tools to work in the queen's yard for hire. The plaintiff, some time afterwards, having taken away his servant, sent for the tools, but the defendant refused

May Term, 1837.

TRAYLOR
v.
HORRALL.

to deliver them up. Trover was then brought for the tools, and the action was sustained on the ground, that as the defendant had wrongfully undertaken to detain them, he took upon himself the right to dispose of them, which was a conversion. The case in 6 Mod. Rep. is settled law, and being relied on in *Bristol* v. *Burt,* it shows the ground upon which the latter case was intended to be placed by the Court.

In *M'Combie* v. *Davies,* 6 East, 538, the plaintiff, by his agent, bought some tobacco which was in the king's warehouse; but the agent took the transfer of the tobacco on the warehouse books in his own name. The agent afterwards pledged the tobacco in his own name with the defendant, and transferred it into the defendant's name on the books in the warehouse. The plaintiff demanded the tobacco of the defendant, who refused to deliver it up until the debt for which it was pledged should be paid. The plaintiff then sued the defendant in trover for the tobacco. It was strongly contended at the trial that there had been no conversion; and the plaintiff was nonsuited. The nonsuit, however, was subsequently set aside and the plaintiff recovered. In that case the defendant, by the transfer to him on the dock books, had the virtual possession and exclusive control of the property, and he wrongfully refused to deliver it to the rightful owner.

In a subsequent case, Chief Justice *Best* took occasion to say, that Lord *Ellenborough,* in *M'Combie* v. *Davies,* had gone to the extreme verge of the law; that as far as that he should go himself; but that in the case before Lord *Ellenborough,* the state of the property was changed, because there had been a transfer in the dock books, which, it was well known, is as much a transfer for the purposes of trade, as an actual removal from one warehouse to another; and that there was, in that case, the exercise of dominion over the goods. *Mallalieu* v. *Laugher,* 3 Carr. & Payne, 551.

The cause which we are now to decide is very different from any of those to which we have referred. For any thing that the record before us presents, the plaintiff may have always continued in the undisturbed possession of the corn in the place where he originally deposited it, or he may have sold it, or have otherwise converted it to his own use.

DEWEY, J., having been concerned as counsel in the cause, was absent.

May Term,
1837.

*Per Curiam.*—The judgment, &c. against the plaintiffs in error is reversed with costs.  Cause remanded, &c.

*S. Judah*, for the plaintiffs.

*D. M'Donald*, for the defendant.