Hale et al. *v.* Barrett et al.

---

FRANKLIN M. HALE *et al.*, Appellants, *v.* JOSEPH BARRETT *et al.*, Appellees.

APPEAL FROM THE SUPERIOR COURT OF CHICAGO.

If goods belonging to different owners are shipped by one bill of lading, the consignee cannot hold the goods of one for the charges upon the goods of the other; each owner is entitled to his goods on the payment of the appropriate charges.

The goods of one person cannot, without his consent, be held or made liable for the charges due upon those of another.

If a warehouseman or consignee delivers goods upon the receipt of the promissory note of the owner for charges, he loses his lien, which will not revive should the goods accidentally be returned to his possession.

THIS was an action of trover brought to the January term, 1860, of the Superior Court of Chicago, by the appellees against the appellants, to recover the value of a ten-foot engine lathe, with counter shaft and hangers, consigned to James Kendall, and received by Hale & Co., in the regular course of their business as receiving and forwarding merchants, at Chicago, from one of a line of propellers for which they were agents, and held by them for charges, etc.

The declaration was in the usual form in trover, to which the appellants severally pleaded the general issue. The cause was tried at February term, 1861, before GOODRICH, Judge, and a jury. Verdict for the plaintiffs below for $425, against all the defendants, who entered a motion for a new trial, which was overruled, and judgment entered on the verdict at the March term, March 15th, 1861. Appeal prayed and allowed.

The facts are substantially as follows:

Barrett & Cutting shipped from Massachusetts a lathe to Kendall of Chicago, to be sold on commission. At the same time

Ball & Ballard, of Massachusetts, also sent to Kendall a quantity of merchandise to be sold on commission ; both lots of goods were sent by same vessel, and came to Hale's warehouse in Chicago. Hale delivered the goods to Kendall in his absence in the country. Before Kendall went into the country, he directed his clerk, Prouty, to pay the charges on the goods. When Kendall returned from the country, and some days after the goods were received, he found the bill had not been paid, and gave Hale his note for the charges ; after the note was given, Prouty, without the knowledge or consent of Kendall, gave Hale a warehouse receipt for the goods. The goods remained in Kendall's possession from early part of the summer till the next February ; then Kendall quit business, and one Manning went into his store. After this, Hale took the goods and removed them to another warehouse.

The bill presented by Hale to Kendall, embraced the charges on the lathe, and also on the merchandise sent by Ball & Ballard, in gross, and Kendall's note was given for the whole amount.

Afterwards Doane, the plaintiffs' agent, called upon the defendants, Hales, and found the lathe in their possession, and offered to pay the freight and charges, and demanded the goods ; they refused to deliver them unless he would also pay the charges on the goods sent by Ball & Ballard. Doane frequently made a like demand, and several times asked them for a bill of the charges on the lathe ; they made him out three different bills, each varying in amount, but each embracing the freight and charges on the bill sent by Ball & Ballard, as well as the lathe, and at all times refused to deliver the lathe unless the charges on the goods of Ball & Ballard, as well as of Barrett & Cutting, were paid.

There is also evidence that Doane at one time actually tendered them over $100 for the charges, though the charges on the lathe were only about $28 to $38 ; there is, however, contradictory evidence as to this tender.

The court, at the instance and request of the counsel for the plaintiffs, instructed the jury as follows :

1. That if the jury believe, from the evidence, that the lathe in controversy was the property of the plaintiffs, and that the defendants had the possession of it, and that the plaintiffs, by their duly authorized agent, demanded the lathe of the'defendants, and that the defendants refused wrongfully (that is, without right) to deliver the same, this is evidence of a conversion, by the defendants, of the lathe to their own use.

2. That if they believe, from the evidence, that the defendants took the lathe from the store formerly occupied by Kendall, without any authority from the plaintiffs or from Kendall, so to

do, and then undertook to keep the same from the plaintiffs, as security for a debt which Kendall owed them, after a demand by the plaintiffs for the same, then they are guilty of a conversion of the lathe, if the same belonged to the plaintiffs.

3. That if Prouty was simply the salesman and book-keeper of Kendall, and that Kendall was not a warehouseman, this gave him no authority to give a warehouse receipt for the lathe, and such receipt, so given, would have no effect in this suit without special authority to do so, or a ratification of the act.

4. That if the defendants had a lien upon the lathe for any freight and charges that they had paid upon it, but took Kendall's due bill for such freight and charges, and delivered the lathe to him, then they lost their lien, and could not afterwards and by a new contract with Kendall, take the lathe and hold it as security for such freight and charges, without the consent of the plaintiffs, if they believed, from the evidence, that they owned the lathe.

5. That the freight and charges upon other goods belonging to other persons, were never any lien upon the lathe, if it belonged to the plaintiffs.

6. That if the plaintiffs owned the lathe and sent it to Kendall as a commission merchant, in the ordinary course of business, to sell, then Kendall had no authority to pledge the lathe to the defendants, either by a warehouse receipt or in any other way, for any debt he on his own account may have owed the defendants.

7. That if the lathe belonged to the plaintiffs, and they, by their agent, demanded the lathe of the defendants, and offered to pay all proper charges for the freight, storage, and other charges upon the lathe, but the defendants refused to deliver it unless charges upon other goods were also paid, then the plaintiffs are entitled to recover.

8. That if the jury find for the plaintiffs their verdict, they may find the value of the lathe at the time of the demand, with interest since that time, at the rate of six per centum per annum, as damages, less by way of recoupment, whatever amount for freight and charges or either, the jury shall believe, from the evidence, the defendants had advanced on said property—if they shall further believe, from the evidence, that the defendants had never voluntarily parted with the possession of said property.

9. If the jury believe, from the evidence, that the defendants refused to deliver up the goods, unless an amount larger than what they were entitled to, should be paid them, and so told the plaintiff or his agent, then no tender was necessary, if the plaintiffs were ready and offered to pay the amount actually due, as the law does not require a party to do a useless thing.

To the giving of each of which said instructions, the defendants duly excepted.

The defendants, by their counsel, thereupon requested the court to instruct the jury as follows:

1. A warehouseman, on receiving goods in the regular course of his business, has a lien upon the goods for any advances which he may have made to the carrier, which may have accrued for the carriage of the goods, and also for his reasonable charges for storage of the goods, if he shall have kept them in store, and has a right to retain the possession of the property until such advances and charges are repaid to him. And if the jury shall believe, from the evidence in this case, that the defendants, or one of them, in the summer of 1857, received the property in question, as warehouseman, and paid to the carrier the sum of sixty-one dollars and fourteen cents, which had accrued for the carriage of the goods, and afterwards kept the goods in store, they had a right to retain the possession of the property until the sum advanced by them and charges for storage was paid to them. Which was given to the jury.

2. If the jury shall believe, from the evidence, that the defendants or any one of them, received the property, as stated in the above instruction, and that they had a lien upon said property, as stated in said instruction, and that the same was consigned to James Kendall, and that the defendants or one of them, made an agreement with James Kendall, that the said James Kendall should receive the said goods, temporarily to hold the same, as bailee for said Hale & Co., and that for that purpose, and in pursuance of said agreement, said Kendall or his authorized agent, executed the warehouse receipt given in evidence in this cause, and that said goods were delivered to and received by said Kendall, under and in pursuance of said agreement, this is not such a delivery of the property as will deprive Hale & Co. of their lien upon the property.

But the court refused to give such instruction as asked, but modified the same by adding thereto the following words: "This is so, if the said agreement was made at the time the goods were first committed to the possession of said Kendall." And the court read to the jury said instruction, thus modified; to which modification and alteration of said instruction, the defendants excepted.

3. If the jury believe, from the evidence, that the defendants, or one of them, received the goods in question, as stated in the first instruction, and that they had a lien upon said goods for advances and storage, as stated in said instruction, and that they had possession of said goods and continued in such possession to the summer and fall of the year 1859, then they had a

right to retain the possession of the property until the amount of the charges and advances were paid or tendered.

Which instruction was given to the jury, as asked.

4. To constitute a legal tender, the money must be actually produced to the party who is entitled to recover it, and if the jury shall believe, from the evidence, under the above instructions, that the defendants or one of them, had a lien upon the property in question, then, before they can be charged with having converted it, the jury should be satisfied, from the evidence, that the amount of this lien was tendered the defendants or one of them, and that upon such tender they or one of them refused to deliver the property. A mere tender to the book-keeper of one of them, is not sufficient.

But the court refused to give such instruction to the jury, as asked, but modified the same by adding thereto the following words : " Of itself. But if the jury shall further believe, from the evidence, that the plaintiffs or their agent, offered to pay the actual amount due for such charges and advances, and the defendants claimed a larger sum, and refused to deliver the lathe unless such larger sum was paid, then an actual tender was not necessary." And read said instruction to the jury, as thus modified; to which modification and alteration of said instruction by the court, the defendants excepted.

The assignment of errors is as follows :

The court erred in giving the plaintiffs' instructions.

The court erred in refusing to give the second instruction for the defendants, as asked, and in modifying and giving the same as modified by the court.

The court erred in refusing to give the fourth instruction for the defendants, as asked, and in modifying and altering the same, and giving the same as modified and altered by the court.

The verdict of the jury was against the law and the evidence.

The court erred in overruling the defendants' motion for a new trial, and giving judgment on the verdict.

HOYNE, MILLER & LEWIS, for Appellants.

VAN BUREN & GARY, for Appellees.

CATON, C. J. If the principle laid down by the court in the instructions is correct, that ends the case at once. This lathe, with several other packages, was received by the defendants as warehousemen and agents of the propeller which brought them to Chicago. All were consigned to Kendall by one bill of lading, with a gross charge for all, but they were shipped by two different consignors, the plaintiff in this action having shipped

the lathe, and another party the other packages. The defendants claimed to hold the lathe for the charges on the whole goods, and refused to deliver it, without payment of the full amount. If this was an illegal claim, then the defendants held the lathe illegally, after it was demanded, and the plaintiff was not bound to go through the useless ceremony of tendering the actual amount due. He had not the same means of knowing what was the amount due, which the defendants had.

We are satisfied the court laid down the correct rule of law on this subject. Had all the goods belonged to the same party, and had they been shipped at the same time, under one bill of lading and to the same consignee, quite a different question would be presented. But here the goods belonged to different parties, · who evidently shipped them separately. How they happened to get into one bill of lading, is not explained, nor is it very material to know. There is no evidence that the plaintiff ever consented that his lathe should be held for charges due on other goods, from another party, and without his consent, no such burthen could ever be thrown on him.

And so, too, was the court right in its rulings, as to the release of the lien, if the goods were delivered to Kendall, the consignee, upon his note for the freight, nor was the lien revived when the lathe came into their hands, when Kendall left the store, on the expiration of his lease, and one of the defendants took possession, as landlord.

We are satisfied with the law, as laid down by the court, and with the verdict of the jury, and are of opinion that the judgment should be affirmed.

*Judgment affirmed.*