# Northern Transportation Company of Ohio

## *v.*

## Daily Sellick.

1. CONVERSION—*what constitutes.* If one person has the property of another in his possession, and the owner makes demand of it, and the party in possession, without right, refuses to deliver it, that will constitute a conversion of the property by the latter to his own use.

2. SAME—*and herein of the respective rights and duties of a shipper and common carrier.* So, where the owner of a carriage shipped the same by a common carrier, the amount to be charged for the transportation being first agreed upon, and, upon the carriage reaching its destination, was demanded by the owner, he offering to pay the charges as agreed, but the agent of the carrier refused to deliver it except upon the payment of a larger amount: *Held,* this was a conversion of the property by the carrier, and the owner could maintain trover therefor. The latter discharged his

duty by making a demand for the carriage immediately on its arrival, and offering to pay the freight agreed upon.

3. The carriage, while in the possession of the carrier, and after the refusal to deliver it to the owner, was destroyed by fire, and it was held that the owner did not waive the effect of such refusal by agreeing at the time to communicate with the agent with whom the contract was made, at the place of shipment, in respect to the amount of freight agreed to be paid. If there was an overcharge for freight, it was as much the duty of the agent of the carrier to make an effort to have it corrected, as it was that of the owner.

4. Nor was the owner under any obligation to pay the overcharge of freight, upon the verbal promise of the warehouseman to refund all over a proper charge. He was not required to put his money in such jeopardy.

5. Interest—*when recoverable, and from what time.* And in such case, where the owner brought trover against the carrier, it was held the plaintiff was entitled to interest on the value of the property from the time of the demand and refusal.

Appeal from the Superior Court of Chicago; the Hon. Joseph E. Gary, Judge, presiding.

The opinion states the case.

Messrs. Waite & Clarke, for the appellants.

Mr. B. W. Ellis, for the appellee.

Mr. Chief Justice Breese delivered the opinion of the Court:

This was an action on the case, for failing to deliver a carriage entrusted to appellants by appellee, to be by them carried from Ogdensburg to Chicago, with a count in trover.

It appears the appellants' agent at Ogdensburg, in the fall of 1866, agreed with appellee, who was about to move to Chicago, to ship his carriage to that place for ten dollars, but if he would leave it until spring, they would carry it for less. It was left until the following spring, and reached Chicago about the 17th of June, 1867. On its arrival, appellee called for it, and offered to pay ten dollars freight, but it was refused him

unless he would pay twenty dollars, and one dollar dockage. This appellee declined doing, and the carriage remained in the control of appellants until the succeeding November, when it was destroyed by fire.

Appellants have failed to make any defense to this action. It was their duty to deliver the carriage when demanded by appellee on its arrival, on his offering to pay the freight agreed upon. The refusal to do so was wrongful, and was, in itself, evidence of a conversion of the property. The demand in June, on the arrival of the carriage, gave appellants an opportunity of delivering the carriage to appellee, and thus relieving themselves from all responsibility. By refusing so to do, unless on compliance with an extortionate demand, greatly beyond the agreed compensation for carrying, threw the entire responsibility, in case of loss, upon the appellants. Appellee had discharged his duty by making a demand for the carriage immediately on its arrival, and offering to pay the freight agreed upon. The refusal to deliver is evidence of a conversion, and appellants have offered nothing to destroy its effect. The carriage, after the demand, remained at their risk.

Appellants' counsel lay much stress upon the fact that appellee agreed to write to Eddy, their agent, and get his statement about the charge. He did write two letters on the subject, and failed to get an answer. He certainly did not undertake that Eddy would reply to his letters. He did all he could to get a statement from the agent. But, under the circumstances, was it not the duty of Howe & Co., the agents of appellants, to make some effort to ascertain the true state of the case? If there was an overcharge, and which, from the testimony of appellee, Howe admitted, it was as much their duty to make an effort to have it corrected, as it was that of appellee.

Appellants' counsel insist there was no absolute refusal to deliver the property before the fire; that it was only a qualified refusal, to which appellee consented, and waived by agreeing himself to " ascertain if there was any overcharge," and for that

purpose, by implication, constituted Howe & Co. his bailees to hold the property until appellee had time to obtain this information. If this position be conceded, it could extend no further than the time necessary to take a letter to Ogdensburg and receive a reply, which, by due course of mail, would not exceed three days. But appellee repeatedly, during the summer, applied for the carriage, and it was refused him, and he threatened with the additional charge of storage, if he did not pay the extortionate charge, relying upon the verbal promise of the warehouseman to refund all over a proper charge. This, appellee was not bound to do. He was not required to put his money in such jeopardy. That the charge was not a proper charge is evident from Eddy's letter, written after the carriage was injured by the fire. That it was one hundred fold greater than the amount agreed upon, is apparent from appellee's testimony. It is true, one, perhaps both, of his sons say no precise amount was agreed upon, but that the charge should be reasonable. The appellee testifies in the most positive terms the charge was to be ten dollars, and he is corroborated by Eddy's letter.

Appellants insist there was no conversion when appellee presented Eddy's letter and demanded payment of the value of the property, which appellants' agents, Howe & Co. refused to pay, but offered to deliver it to him as it then was, which he refused to receive, demanding only its value.

The conversion dates back to about the 17th of June, when the carriage reached Chicago, and the demand was made for it, and on offering to pay the charges agreed upon. It certainly would have been competent for appellee, under the circumstances, to have sued out his writ of replevin for the carriage, as he became then entitled to the possession of it. We understand such proof would sustain an action of trover. It could be, certainly, no satisfaction to appellee to receive such parts of the carriage as remained after the fire. They were the irons, probably, of the vehicle, and injured by the fire. To tender them on a demand for a costly carriage which they

had in their possession, and refused to deliver to the owner when demanded, would be unreasonable.

That there was a conversion of the property under the facts proved, it is only necessary to refer to some of the cases cited by appellants. In *Hill* v. *Cook*, 1 Comst. 522, it was held, a demand and refusal were evidence of a conversion, but might be repelled by showing that a compliance with the demand was impossible. In *Yale* v. *Sanders*, 16 Verm. 243, the court said a defendant in trover would not be found guilty of a conversion of the property, upon evidence merely of a demand and refusal, unless the property was, in some way, subject to his control. This carriage was in that condition. Howe & Co. were the agents of appellants to deliver goods carried by them. So, in *Taylor et al.* v. *Honall*, 4 Blackf. 317, the well-known rule was announced, to support the action of trover there must be proof of property in the plaintiff, possession to have been in the defendant, and a conversion by the defendant, and the gist of the action being the conversion, unless the defendant has had the actual or virtual possession of the goods, he cannot be charged with a conversion to his own use. The application of the case from this court, *Byrne* v. *Stout*, 15 Ill. 180, is not perceived. It is cited under the head of an offer to return the carriage in its damaged condition. There, the hog being troublesome to defendant, he castrated it, and turned it loose, and it was afterwards found dead. The court say, castrating a scrub male hog running among one's stock is not such proof of a change of property as to be evidence of a conversion or appropriation to plaintiff's (defendant below) use. Appellants' counsel may perceive the pertinency of this case. We do not.

The law of this case is fully stated in the first instruction given in the case of *Hale et al.* v. *Barret et al.* 26 Ill. 195. That instruction is substantially this : If the lathe in controversy was the property of the plaintiff, and the defendant had the possession of it, and the plaintiff demanded the lathe, and defendant, without right, refused to deliver it, that was

evidence of a conversion by the defendant of the lathe to his own use. The same facts appear in this case, and constitute a conversion of the carriage on the 17th of June, 1867.

And this case disposes also of the question of interest, raised by appellants here, for it was there held, the eighth instruction, directing the jury to allow interest on the value of the lathe from the time of the demand, was proper, and see also *C. & N. W. R. R. Co.* v. *Ames*, 40 ib. 249.

The objection that the verdict is too large by twelve dollars and thirty-four cents, is predicated in a wrong assumption of time from which interest should be calculated. If calculated from the day of the demand, as it should be, to the day of trial, it will be found the finding is not too large.

In the language of this court, in the case of *Bissel et al.* v. *Price*, 16 Ill. 409, these associations, for the transportation of goods, are a great public convenience, if properly and honorably conducted; while, on the other hand, their position enables them to practice a constant system of peculation, oppression, fraud and injustice, when there is a disposition to pursue such a course, to which individuals are often inclined to submit, rather than vindicate their rights at a cost and trouble greater than the amount suffered by the wrong perpetrated; and while it is the duty and the policy of the courts and of the law to protect these forwarders and carriers when they have acted fairly, justly, and in good faith, so, on the other hand, they cannot be too strict in visiting them with the most exemplary judgments, whenever a disposition is evinced to prey upon those whom they suppose at too great a distance to protect their rights, or prefer to submit to the injustice rather than the expense of a prosecution.

In the light of these remarks, appellee is entitled to commendation for instituting and prosecuting this action, and resisting an extortionate demand.

The judgment of the court below is in all things affirmed.

*Judgment affirmed.*