## J. F. SCHWITTERS, Appellee, *vs.* WARREN SPRINGER, Appellant.

*Opinion filed October 26, 1908—Rehearing denied Dec. 2, 1908.*

1. EVIDENCE—*what is competent in action for fraud and deceit.* In an action for fraud and deceit in the sale of notes represented to be secured by a trust deed on a leasehold estate, evidence as to what income was produced by the leasehold property is competent, notwithstanding the facts that the property was only partially rented or not rented to the best advantage, as such facts affect only the weight, and not the competency, of the evidence as to the income-producing capacity of the property.

2. SAME—*the defendant may be asked names of purchasers of other notes.* In an action for fraud and deceit in the sale of notes, the defendant may be asked, on cross-examination, the names of the purchasers of other notes of the series, provided the inquiry is limited to the identification of such purchasers without going into the question whether there had not been trouble with each purchaser.

3. TRIAL—*whether a witness may be called after argument has been begun is for the court.* Whether the defendant, for the purpose of contradicting a statement made by the plaintiff, may, after argument to the jury has begun, be permitted to examine a witness whose attendance the defendant had not been able to secure before the argument was begun, is a matter resting in the sound discretion of the court.

4. DAMAGES—*measure of damages in action for fraud in sale of notes.* The measure of damages in an action for fraud and deceit in the sale of notes upon which the defendant is not personally liable, is the difference between their actual value and what their value would have been at the time of the transaction had the defendant's representations been true, with interest at the legal rate of five per cent up to the time of the trial.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. A. H. CHETLAIN, Judge, presiding.

DOUGLAS C. GREGG, and WILLIAM J. AMMEN, for appellant.

FRANK P. SADLER, and ELSWORTH T. MARTIN, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The appellee sued appellant in an action on the case for fraud and deceit, whereby the appellee received in exchange for eight hundred acres of land in Colorado two notes for $1000 each, which were worthless. The notes were two of the series of $75,000 described in the case of *Leonard* v. *Springer,* 197 Ill. 532, and the declaration is substantially a duplicate of the declaration in that case so far as it relates to the fraudulent scheme of deceit conceived and carried out by the appellant for the purpose of swindling the purchasers of the series of notes mentioned and the execution of the deeds, notes and trust deed involved in that swindling scheme. The declaration was amended on the trial so as to aver that the defendant falsely represented that the notes were gilt-edged and the property securing them was worth at least twice the incumbrance on it, and that the plaintiff relied upon such representations as well as the statements appearing on the face of said notes and the endorsements thereon.

The evidence tended to support the material averments of the declaration, and it is not contended that the declaration did not state a cause of action nor that the judgment should be reversed because the evidence does not sustain the declaration, but it is insisted that various errors occurred at the trial which require a reversal of the judgment. Objection was made to permitting Mr. Epps, who had charge of the leasehold property in 1898 and later, to testify as to the income it was producing, on the ground that it was only partially rented, was in litigation and in the hands of a receiver. The income-producing capacity of the property was material, as affecting the value of the leasehold. The circumstances mentioned were proper for consideration in this connection, as well as the fact, if such was the fact, that

the property was not rented to the best advantage of which it was capable, but they affected only the weight—not the competency—of the evidence.

The appellee asked appellant in regard to sales of other notes of the series, and on cross-examination the court permitted inquiries to be made of appellant concerning the persons to whom such other notes were sold. Appellee sought to ascertain whether there had not been trouble with each purchaser, but the court refused to allow this investigation and limited it to the identification of the purchasers. This was not error.

Appellee testified that one of the appellant's witnesses (Haines) had been present at an interview in appellant's office and had been introduced by appellant to appellee as Maginnis. After this testimony appellant endeavored to secure Haines' attendance but was unable to do so until after the argument to the jury had begun. He then asked the court to permit him to examine the witness for the purpose of contradicting appellee, but the court refused to do so. It was within the discretion of the court to permit this to be done, and it does not appear that the discretion was abused.

A large number of instances of alleged improper conduct on the part of the appellee's counsel during the trial and argument of the cause has been called to our attention which, it is claimed, were prejudicial to appellant. In much the larger number of such instances no objection or exception appears in the record. Counsel for appellee was guilty of improper conduct. He was offensively persistent in the repetition of questions to which objections had been sustained and in attempting to press his claims which had been repeatedly overruled by the court. The court more than once threatened to fine him and his conduct was annoying and reprehensible, but his misconduct was not such as to affect the merits of the case or prejudice the defense. We cannot say that it prevented a fair trial or that a new trial should have been granted on account of it.

236—18

All the instructions given at the instance of the appellee are criticised by appellant's counsel, as well as the refusal of most of those requested by the appellant and not given. Except in one particular we do not regard the objections to the instructions given as well taken, and everything in the refused instructions to which appellant was entitled was contained in other instructions given. The fourth instruction given for the plaintiff told the jury, substantially, that the measure of damages was the difference between the actual value of the notes when traded to the plaintiff and what their value would have been if the representations made to the plaintiff had been true, and that in determining this the jury might take into consideration the unpaid interest which had accrued to the plaintiff on said notes according to their terms, to the time of the trial. That part of the instruction was right which told the jury that the measure of damages was the difference between the actual value of the notes and what their value would have been if the representations made had been true, but so far as the interest is concerned it was wrong. The notes bore seven per cent interest after maturity, and the effect of this instruction was to allow the plaintiff to recover that rate of interest. The measure of damages for the wrongful conversion of goods is the value of the goods at the time of the conversion, with legal interest. (*Janeway* v. *Burton,* 201 Ill. 78.) In an action on the case for fraudulent representations in the sale of property the measure of damages is the difference between the value of the property as it is and what it would be worth if the representations had been true. (*Antle* v. *Sexton,* 137 Ill. 410; *Drew* v. *Beall,* 62 id. 164.) Here the trade was consummated October 19, 1898. The notes for $2000, with six per cent interest per annum for fifteen months, were due November 6, 1898, and would then amount to $2150. The appellee's damages, under the rule just mentioned, could not at that time have exceeded $2150. The promise to pay that amount of money on No-

vember 6 could not be worth more than the money itself on October 19. By the payment of that sum the appellant could have discharged himself from all obligation to appellee. Appellant was not liable on the notes. He did not guarantee their payment. His only liability arose out of the fraud practiced on appellee. He was under no contract obligation and did not agree to pay interest. His liability was only that which the law imposed. At common law, interest was not recoverable in any case. Its recovery depends entirely upon the statute. (*City of Pekin* v. *Reynolds,* 31 Ill. 529; *Illinois Central Railroad Co.* v. *Cobb,* 72 id. 148.) Where property has been wrongfully taken or converted into money, interest may be recovered; (*Illinois Central Railroad Co.* v. *Cobb, supra; Northern Transportation Co.* v. *Sellick,* 52 Ill. 249; *Chicago and Northwestern Railway Co.* v. *Ames,* 40 id. 249; *Hale* v. *Barrett,* 26 id. 195;) but under the statute, interest at a rate exceeding five percentum per annum can be recovered only by virtue of a contract. There was no contract, and appellant was therefore liable for interest only at the statutory rate of five per cent. In *Keaggy* v. *Hite,* 12 Ill. 99, (an action of trover for a promissory note,) it was held that the plaintiff, if entitled to recover, is entitled to a verdict for the amount of the note at the time of the conversion. In *Sturges* v. *Keith,* 57 Ill. 451, where the articles converted were railway stocks, the plaintiff was permitted in the trial court to recover the market value of the stock at the time of the trial, together with all dividends paid since the conversion. The stock had greatly increased in value in the interim. This court held that the true measure of damages was the current market value of the property at the time of the conversion, with interest from that time until the trial, and not the value of the property at any subsequent date. In this case the measure of damages was the value of the note at the time the appellee took it, and the appellant was liable for interest at the legal rate. It was therefore erroneous to instruct

the jury that it was proper to take into consideration the unpaid interest which had accrued to the plaintiff on the said notes according to their terms, to the time of the trial. This made the measure of damages the amount due on the notes at the time of the trial, and is inconsistent with the case of *Sturges* v. *Keith, supra.*

Appellee in his brief offers to remit the sum of $243.16 if the instruction is held to be erroneous in regard to the rate of interest. Such *remittitur* will obviate the error, and the judgment of the Appellate Court will be affirmed as to the residue of $2949.04 as of the date of the judgment of the superior court. The costs in this court will be paid by the appellee. *Judgment affirmed.*