KNOX COLLEGE, Plaintiff-Appellant, *v.* THE CELOTEX CORPORATION *et al.*, Defendants-Appellees.

Third District   No. 79-216

Opinion filed June 30, 1980.—Rehearing denied August 5, 1980.

George V. Bobrinskoy, Jr., and Michele Odorizzi, both of Mayer, Brown & Platt, of Chicago, and Douglas R. Mustain, of West, Neagle & Williamson, of Galesburg, for appellant.

James T. Ferrini, David B. McAfee, and Robert H. Mittelman, all of Clausen, Miller, Gorman, Caffrey & Witous, P. C., of Chicago, for appellee Celotex Corporation.

Clifford E. Schneider and Brian W. Ruddell, both of Davis & Morgan, of Peoria, for appellees C. Iber & Sons, Inc., and The Travelers Indemnity Company.

Charles G. Roth and Phillip B. Lenzini, both of Kavanagh, Scully, Sudow, White, and Frederick, of Peoria, for appellee Perkins & Will.

Mr. JUSTICE BARRY delivered the opinion of the court:

This is an appeal by plaintiff, Knox College, from an order of the circuit court of Knox County dismissing with prejudice the plaintiff's second amended complaint against defendants, Celotex Corporation, Perkins & Will, C. Iber and Sons, and the Travelers Indemnity Company. For the reasons stated hereafter, we reverse and remand.

In 1964, Knox College entered into a contract with the architectural firm of Perkins & Will to design and supervise the construction of a math-science building on the college's Galesburg campus. The general contractor for this project was C. Iber and Sons, which provided a performance bond with the Travelers Indemnity Company as surety pursuant to its contract with the college. C. Iber and Sons subsequently subcontracted the roofing work to White's Roofing and Insulation, Inc.

Although Perkins & Will's original roofing specifications called for a built-up bituminous membrane roofing on a four-ply, 20-year bondable organic felt and bitumen system, the specifications were later changed

with the knowledge of Knox College to a two-ply coated felt roofing system ("Barrett Bond Ply No. 220-INS") as a result of representations by the Celotex Corporation that the two-ply system was the functional equivalent of the four-ply system. Pursuant to the specifications change, White installed Celotex's two-ply roof on the roof of the math-science building in September 1970.

Soon after the roof was installed it began to leak. From September 1970 until October 1973, White repaired the roof at its own expense under the terms of a five-year guarantee. In October of 1973 the college began to share the repair expenses with White, and as of May 1976 the college had expended approximately $13,000 for roofing repairs.

In July 1976, the college was informed that the entire roofing membrane and insulation would have to be replaced. However, it was not until November of that year that the college was informed by an independent roofing consultant that the roofing problems were, or might have been, caused by deficiencies in the Celotex two-ply roofing system. In the fall of 1977 and the spring of 1978 the entire roof was replaced at a cost to Knox College of $135,000. Knox College subsequently filed suit against the defendants for $175,000 in compensatory damages, plus punitive damages against Celotex, on June 9, 1978. A second amended complaint was filed on November 14, 1978.

The plaintiff's second amended complaint contained eight counts. Counts I through III alleged tortious misrepresentation and fraud on the part of Celotex in the promotion of the two-ply roofing system and in the sale of "Celo-therm" insulation to plaintiff. Count IV alleged that Perkins & Will had breached its contract with Knox College by specifying the use of the two-ply system. Counts V and VI alleged, respectively, breach of contract and breach of written guarantee by C. Iber and Sons. Finally, in counts VII and VIII, the plaintiff sought recovery against Traveler's Indemnity as surety on C. Iber's performance bond. On January 4, 1979, the circuit court of Knox County granted the defendants' motions to dismiss the plaintiff's amended complaint. The court, in its memorandum opinion, found that counts I through III were barred by the statute of limitations, count IV was to be stricken "as sounding both in tort and contract, and possibly indemnity, the causes of action not being set out as required by Chapter 110, Section 33(2), Illinois Revised Statutes, 1977," and counts V through VIII were "insufficient within themselves to sustain a cause of action" under section 33(2) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 33(2)). The appropriate orders dismissing the plaintiff's amended complaint and granting judgments for all defendants were entered on February 2, 1979.

On appeal from these orders of the circuit court, three issues are raised by the plaintiff: First, is Knox College's cause of action against the defendant Celotex barred by the statute of limitations; second, did the

lower court properly dismiss count IV of the plaintiff's second amended complaint on the ground that it violates the requirements of section 33(2) of the Civil Practice Act; and finally, did the trial court properly dismiss counts V through VIII on the grounds that they were "insufficient within themselves to state a cause of action" under section 33(2) of the Civil Practice Act.

■■ The statute of limitations for tortious misrepresentation is five years (Ill. Rev. Stat. 1977, ch. 83, par. 16). By the very terms of the statute, the limitation period commences when the cause of action accrues. The plaintiff urges this court to apply the "discovery rule" first pronounced in *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656, in determining when the cause of action for tortious misrepresentation accrued against Celotex. Using the discovery rule, the cause of action accrues when the plaintiff knew or should have known of the existence of his right to sue. Whether the rule is to be applied, however, depends upon the outcome of a balancing test articulated in *Rozny*:

> "The basic problem is one of balancing the increase in difficulty of proof which accompanies the passage of time against the hardship to the plaintiff who neither knows nor should have known of the existence of his right to sue. There are some actions in which the passage of time, from the instant when the facts giving rise to liability occurred, so greatly increases the problems of proof that it has been deemed necessary to bar plaintiffs who had not become aware of their rights of action within the statutory period as measured from the time such facts occurred. [Citations omitted]. But where the passage of time does little to increase the problems of proof, the ends of justice are served by permitting plaintiff to sue within the statutory period computed from the time at which he knew or should have known of the existence of the right to sue." (43 Ill. 2d 54, 70, 250 N.E.2d 656, 664.)

(Accord, *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1975), 61 Ill. 2d 129, 334 N.E.2d 160.) Applying this balancing test to the instant case, it is clear that the discovery rule should be applied to determine when the cause of action against Celotex accrued. The plaintiff's amended complaint alleges that Celotex was guilty of tortious misrepresentation and fraud in the promotion and sale of the two-ply system and Celo-therm insulation. The burden upon the plaintiff at trial is to present proof supportive of these allegations. The burden of the defendant is to present evidence in refutation. We have reviewed the plaintiff's complaint and found it to be replete with references to correspondence and Celotex promotional material probative of the issues of tortious misrepresentation and fraud. Because most of the proof required of plaintiff and of defendant consists of

documentary evidence, the problems of proof are not increased by the passage of time, and the ends of justice are therefore served by computing the five-year statutory period from the time Knox College knew or should have known of the existence of a cause of action.

Determining that the discovery rule applies in the instant case, however, is but the first step toward resolving the issue of whether the plaintiff's cause of action against Celotex was time-barred. Although the rule is easily stated, its application is much more difficult. Does the cause of action accrue when the plaintiff knows that he has suffered injury or damage, or does it accrue when he knows or should know that the injury or damage is the result of another's tortious act? Stated another way, "[s]pecifically, the question is whether the limitation period commences at the time the injured party discovers or should have discovered his condition, or at the time he discovers or should have discovered the cause of his condition." *Kristina v. St. James Hospital* (1978), 63 Ill. App. 3d 810, 812, 380 N.E.2d 816, 818.

In dismissing the plaintiff's complaint on the grounds that it was time-barred, the circuit court found that the cause of action accrued for statute of limitations purposes when the leaking first began in 1970. The opinion of the trial court on this subject is as follows:

> "The complaint on its face indicates that the leaking problems started in 1970 or shortly thereafter. When you have a new roof that leaks, it leaks. And this means water is coming through. It is something you can see and you don't need an expert opinion to tell you that something is wrong with the roof. You know there is something wrong with the roof because it leaks. You do not need an expert opinion, as from a doctor or a surveyor, to tell you that you have a faulty roof. To determine that a roof leaks is not beyond the ken of the ordinary layman. The more it leaks and the longer it leaks is enough to put a person on notice, and that is just what this roof did, right up until it was replaced. You have five years from the time it starts leaking, and in this case, according to the complaint, it started to leak immediately. Therefore, the Court finds that the plaintiff knew he had a faulty roof in 1970 or 1971, and that the Statute of Limitations has run on Counts I, II, and III."

However, there are a number of cases, most involving medical malpractice, which hold that the statute of limitations commences "when the injured party discovers or should reasonably have discovered not only the nature of the affliction but also that it was wrongfully caused." (*Kristina*, 63 Ill. App. 3d 810, 812, 380 N.E.2d 816, 818. Accord, *Licka v. William A. Sales, Ltd.* (1979), 70 Ill. App. 3d 929, 388 N.E.2d 1261; *Martinez v. Rosenzweig* (1979), 70 Ill. App. 3d 155, 387 N.E.2d 1263; *Nolan v. Johns-Manville Asbestos & Magnesia Materials Co.* (1979), 74 Ill.

App. 3d 778, 392 N.E.2d 1352; *Roper v. Markle* (1978), 59 Ill. App. 3d 706, 375 N.E.2d 934.) In *Society of Mount Carmel v. Fox* (1975), 31 Ill. App. 3d 1060, 335 N.E.2d 588, the Second District applied this interpretation of the discovery rule to a case factually similar to the case at bar. In *Society of Mount Carmel,* the plaintiff began to notice "cracks, bulging, movement, and separation of the plaster, masonry and walls" of a school building designed by the defendant architect. The damage came to the plaintiff's attention in 1963, shortly after the work on the building was completed. The defendant, however, made a number of assurances to the plaintiff that the problems were not serious, and consequently the plaintiff made the necessary repairs at its own expense. It was not until 1969 that the plaintiff discovered that the defendant's defective design was the cause of the damage. The plaintiff brought a negligence action against the defendant in 1970, but the trial court dismissed the plaintiff's complaint on the grounds that the action was barred by the statute of limitations. On appeal, the Second District phrased the issues as follows: "[W]hether the statute of limitations began to run from 1963 when the building was completed (as defendant contends) or whether it began running from the time plaintiff discovered or should have discovered the defects complained of." (31 Ill. App. 3d 1060, 1061, 335 N.E.2d 588, 589.) After examining the facts of the case in light of the balancing test of *Rozny* and *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1975), 61 Ill. 2d 129, 334 N.E.2d 160, the court held that "the ends of justice would be best served by allowing plaintiff to sue within the statutory period computed from the time it knew or should have known of the *existence of the alleged defective design.*" (Emphasis added.) 31 Ill. App. 3d 1060, 1063, 335 N.E.2d 588, 590.

■■ In the instant case, the trial court held that the plaintiff college was on notice that something was wrong with the roof in 1970 when it began to leak. However, the college did not know that the premature failure of the roofing membrane was, or might have been, caused by the deficiencies of the two-ply system until November of 1976, when it was so informed by an independent roofing consultant. There is nothing in the record before us which suggests the contrary. From September 1970 until October of 1973 White, at its own expense, made repairs on the roof pursuant to a five-year guarantee. During this period of time the college was certainly justified in believing that the problems were the result of faulty application, rather than the result of deficiencies of the roofing system itself. Even after October 1973, when the college began to share some of the repair expense with White, there is no evidence that the college knew, or should have known, that the two-ply roofing system was the root of the problem. In its discussions with White (from September 1970 until May 1976), the college was merely informed that some of the leaks were caused by cracks within the concrete roof deck. Perkins & Will never

offered an opinion as to the cause of the leaks, despite inquiries by the college and on-site inspection by the architects. Finally, in response to a request by the college, Celotex representatives inspected the plaintiff's roof in October 1976, and informed the college that the roofing problems were caused by delamination of the insulation. Under these facts, we hold that although the leaking began in 1970, the college did not know, nor should it reasonably have known, that the leaking was caused, or might have been caused, by the inadequacies of the Celotex two-ply system until November of 1976. Consequently, the college's cause of action against Celotex did not accrue until that time, and the filing of the plaintiff's first complaint was well within the five-year statute of limitations.

■■ We also reject the defendants' contention that the cause of action accrued in October of 1973 when the college began to share repair expense with White, and that therefore the plaintiff's cause of action against Celotex was barred by the running of the statute. The defendants rely upon the case of *Dolce v. Gamberdino* (1978), 60 Ill. App. 3d 124, 376 N.E.2d 273, in support of its position that the *Rozny* discovery rule should not be applied when the discovery occurs prior to the running of the statute of limitations. (Accord, *Tomes v. Chrysler Corp.* (1978), 60 Ill. App. 3d 707, 377 N.E.2d 224; Scott, *For Whom the Time Tolls—Time of Discovery and the Statute of Limitations*, 64 Ill. B.J. 326 (1976).) We believe, however, that the better rule is that in cases in which the discovery rule is applicable the plaintiff gets the benefit of the full statutory period no matter when the cause of action accrues. (*E. J. Korvette v. Esko Roofing Co.* (1976), 38 Ill. App. 3d 905, 350 N.E.2d 10.) Such a rule is consistent with the dictates of *Rozny*. In addition, this rule was followed *sub silentio* in *Society of Mount Carmel* under similar facts. In that case, the Second District held that the cause of action accrued when the plaintiff knew or should have known of the defendant's alleged defective design, and by its silence with regard to the legal importance of the plaintiff's repair expenditures obviously concluded that such a fact had no bearing on the statute of limitation' question. We reach a similar conclusion here. The fact that the plaintiff in the case at bar incurred some expenses for the repair of the roof prior to November of 1976 does not trigger the running of the statute. The statute of limitation only began to run when the plaintiff first became aware that the true cause of leaking was, or might have been, the deficiencies in Celotex's two-ply roofing system in November 1976.

The second issue raised by the plaintiff is whether the trial court erred in striking count IV of the plaintiff's complaint. In its memorandum opinion, the trial court held:

"Count IV as to Perkins and Will is stricken as sounding both in tort and in contract, and possibly indemnity, the causes of action not being set out as required by Chapter 110, Section 33(2), Illinois Revised Statutes, 1977."

In order to avoid discussing the correctness of the lower court's decision in a vacuum, count IV of the plaintiff's second amended complaint shall be set out in full:

## "COUNT IV
### (Perkins & Will—Breach of Written Contract)

37. By virtue of entry into the written agreement with Plaintiff more fully described in Paragraph 4 above, and attached to the Complaint as Exhibit "A", whereby Perkins & Will agreed to act as architect for the construction of Plaintiff's Math-Science Center, Perkins & Will undertook to perform for Plaintiff the following duties:

A. 'Design Development Phase
a) The Architect shall prepare from the approved schematic design studies, the design development documents consisting of plans, elevations and other drawings, and outline specifications, to fix and illustrate the size and character of the entire Project in its essentials as to kinds of materials, type of structure, mechanical and electrical systems and such other work as may be required.'

B. 'Construction Documents Phase
a) The Architect shall prepare from the approved design development documents, working drawings and specifications setting forth in detail and prescribing the work to be done, and the materials, workmanship, finishes, and equipment required for the architectural, structural, mechanical, electrical, service-connected equipment, and site work * * *.'

C. 'Construction Phase—General Administration of Construction Contracts
* * *
c) * * * [H]e will keep the Owner informed of the progress of the work, will endeavor to guard the Owner against defects and deficiencies in the work of Contractors * * *.'

38. Further, by implication of law, Perkins & Will, as architect,

undertook to perform for Plaintiff one or more of the following duties and obligations arising out of its written contract with Plaintiff:

(a) The duty to specify only such materials and methods of construction as were fit for their intended purpose and use;

(b) The duty to conduct an investigation, consistent with the ordinary and reasonable skill usually exercised by persons in the profession of architecture, prior to specification of any materials or method of construction;

(c) The continuing duty, subsequent to specification of particular materials or methods of construction, to ascertain, and report to the client, new information creating doubt with respect to the validity of specifications previously made;

(d) The duty thoroughly to investigate defects, problems or failures occurring in the project, and promptly to ascertain, and report to the client, their cause.

39. Perkins and Will breached one or more of the duties which it owed to Plaintiff in the following respects:

(a) The Celotex two-ply Specification No. 220-INS was unfit for use as a roofing membrane in Western Illinois, for reasons set forth in Paragraph 16 of Count I above;

(b) In the period of time prior to September, 1970, Perkins & Will could have ascertained that coated felt specifications, particularly two-ply systems, would present substantial risk of premature failure if installed in Western Illinois.

(c) Despite Plaintiff's prompt written notification to Perkins & Will of problems encountered in the roofing membrane as set forth in Paragraph 18 of Count I above, Perkins & Will failed thoroughly to investigate those conditions and report their cause to Plaintiff.

40. Plaintiff has been damaged as a result of the breaches of duty by Perkins & Will set forth above. Because of Perkins & Will's wrongful specification of the Celotex two-ply system, Plaintiff has incurred the costs of repair, replacement, aggravation, inconvenience and loss of use set forth in Paragraphs 10 and 17 above. In so far as any portion of Plaintiff's causes of action against Celotex might be held to be barred by the statute of limitations, Plaintiff has been damaged by Perkins & Will's failure to discover and report to Plaintiff the causes of the leaks in the roofing membrane on Plaintiff's Math-Science Center.

41. Plaintiff has performed all conditions precedent to the maintenance of this action, including without limitation on the generality of the foregoing, any obligation promptly to give

written notification to Perkins & Will of any observed defect in the project.

WHEREFORE, Plaintiff prays Judgment against Perkins & Will in the sum of $175,000.00 and its costs."

Section 33(2) of the Civil Practice Act provides:

"(2) Each separate claim or cause of action upon which a separate recovery might be had shall be stated in a separate count or counterclaim, as the case may be and each count, counterclaim, defense or reply, shall be separately pleaded, designated and numbered consecutively, each paragraph containing, as nearly as may be, a separate allegation." (Ill. Rev. Stat. 1977, ch. 110, par. 33(2).)

In support of its position that the action of the trial court in dismissing count IV was improper, the plaintiff relies upon the cases of *Board of Education v. Del Bianco & Associates* (1978), 57 Ill. App. 3d 302, 372 N.E.2d 953; *Iverson v. Iverson* (1976), 38 Ill. App. 3d 308, 347 N.E.2d 6; and *Adams v. J. I. Case Co.* (1970), 125 Ill. App. 2d 388, 261 N.E.2d 1. Although *Del Bianco* is factually inapplicable to the instant case, *Adams* and *Iverson* do shed some light on the sufficiency of a pleading which combines several causes of action in one count. In *Adams*, the court stated that the requirements of section 33(2) must be read in light of sections 4, 33(3), and 42(2) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, pars. 4, 33(3), and 42(2)) (section 4 provides, *inter alia*, that the Civil Practice Act shall be liberally construed, section 33(3) states that "[p]leadings shall be liberally construed with a view to doing substantial justice between the parties," and section 42(2) states that "[n]o pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he is called upon to meet.") The court went on to say:

"The trend of the cases interpreting the apparent conflict arising between Section 33(2) on the one hand with Sections 4, 33(3) and 42(2) evidences the intention of courts to follow the requirements for liberal construction and uphold complaints which contain sufficient allegations to inform the defendant of a valid claim under a general class of cases to the end that controversies may be decided on their merits and not because of the adherence to a rigid form of pleading required by a strict interpretation of the Civil Practice Act." (125 Ill. App. 2d 388, 394, 261 N.E.2d 1, 4.)

Following this trend, the court found the alleged duplicity of two of the counts of the plaintiff's complaint not to be fatal, and quoted the following passage from *Savoie v. Town of Bourbonnais* (1950), 339 Ill. App. 551, 557, 90 N.E.2d 645:

" 'The alleged formal deficiencies of the complaint, urged by defendants, to the effect that numerous causes of action were pleaded in the same count in violation of the Civil Practice Act [citation], are without merit, inasmuch as the various breaches of duty alleged by plaintiff were based upon the same set of facts, and could be properly treated as a single cause of action, and set forth in the same count.' (125 Ill. App. 2d 388, 399, 261 N.E.2d 1, 6.)" Accord, *Iverson.*

■■ From our examination of count IV in light of *Adams* and *Iverson* we conclude that this count should not have been stricken. Certainly all of the allegations contained therein are "based upon the same set of facts." Paragraph 37 of count IV outlines the duties owed to plaintiff by the defendant architect under the contract. Paragraph 38 alleges various duties of Perkins & Will that arose out of the contractual provisions "by implication of law." Paragraph 39 indicates the manner in which these duties have allegedly been breached, and paragraph 40 alleges damages. The allegations of the entire count thus arise out of the same set of facts, *i.e.,* the contract between the college and the architects. It is true that not all of the duties which Knox College alleges have arisen as a result of the contract are to be found within the four corners of the document itself, but all of the duties enumerated in count IV arise as a result of its execution. Additionally, the allegations of count IV are specific enough to reasonably inform the defendant of the claims it is to meet. For these reasons we hold that count IV was not bad in substance, and it was error for the lower court to have stricken it.

Finally, the plaintiff urges this court to reverse the ruling of the lower court striking counts V through VIII of the second amended complaint on the grounds that under section 33(2) these counts were "insufficient within themselves to sustain a cause of action." More specifically, the trial court held as to counts V and VI:

"Of Count V, paragraph 45 is not good pleading and is stricken. Paragraph 46 is a further explanation of paragraph 45. 46(a), (b), (c), (h), and (i) are stricken as conclusions. 46(f) and (g) are stricken as to the conclusions they contain.

Of Count VI, paragraph 54 (presumably paragraph 45 of Count V) is stricken. Paragraph 56 is a restatement of paragraph 46, Count V and the same objections apply."

Count V alleges breach of contract by C. Iber and Sons, the general contractor. After first summarizing the obligations of C. Iber under the contract with the college with regard to construction of the math-science building, the plaintiff's complaint goes on to state:

"45. Contrary to these obligations, Defendant, Iber, caused, or permitted, construction such that the cement roof deck from time

to time experienced cracks and splits which, Plaintiff alleges in part caused or contributed to the splits in the roofing membrane described above, all to Plaintiff's damage.

46. Defendant, Iber, failed to comply with said contract in one or more of the following respects.

a. Failed to supervise and direct the work of its subcontractors;

b. Failed to correct the work of its subcontractors which did not conform to the requirements of the contract documents;

c. Failed to remedy defects to faulty materials, equipment and workmanship of its subcontractors;

\* \* \*

f. Contrary to standard practice and good workmanship allowed White to install on the Math-Science Center defective roof membrane of a two-ply specification manufactured by Defendant, Celotex, the Barrett Bond Ply No. 220-INS as described in Paragraphs 12 and 13 which said roof membrane because of said defects split and cracked causing said roof to crack and peal;

g. Contrary to standard practice and good workmanship allowed White to install defective roof insulation 'Celo-therm' as described in Paragraphs 29 and 30 which said insulation because of said defects caused the said roof to leak and split;

h. Contrary to specifications, standard practice, and good workmanship failed to inspect the work of its agents, servants and subcontractors; and

i. Otherwise failed to follow standard practice and good workmanship in the installation of the deck, insulation and roof."

The plaintiff's complaint then alleges that as a result of C. Iber's failure to comply with the terms of its contract with the college, C. Iber breached the contract and the plaintiff incurred damage of $175,000.

Count VI, also brought against C. Iber, is based upon breach of written guarantee. In this count, the plaintiff alleges that under the contract with the college C. Iber agreed to construct the math-science building in accordance with the plans and specifications of Perkins & Will, which provided a roof guaranteed for five years. The plaintiff further alleges in count VI that prior to the expiration of the five-year period the roof began to leak, and as a consequence the guarantee was breached. In paragraph 54 of count VI the plaintiff "repeats, realleges, and incorporates" the allegations of paragraph 45 of count V. The allegations of paragraph 56 are virtually identical to the allegations of paragraph 46 previously recited.

■■ Although the circuit court struck counts V and VI because they did not meet the requirements of section 33(2) of the Civil Practice Act and, more specifically, contained conclusions, we are of the opinion that no

fatal defect of substance is apparent in either count. With regard to the finding that counts V and VI contain allegations which are conclusionary, the court, in *Browning v. Heritage Insurance Co.* (1975), 33 Ill. App. 3d 943, 946, 338 N.E.2d 912, 915-16, stated:

> "Section 42(2) of the Civil Practice Act provides a test for defects of substance where a pleading is attacked, *i.e.*, that no pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim which he is called upon to meet. Under this test, allegations of legal conclusions and allegations of evidence constitute merely formal defects and defects of substance."

(Accord, *People v. Northbrook Sports Club* (1977), 53 Ill. App. 3d 331.) Further, examining counts V and VI in light of sections 4, 33(3) and 42(2) of the Civil Practice Act, as well as section 33(2) (see *Adams v. J. I. Case Co.*), we are of the opinion that those counts reasonably inform the defendant C. Iber of the claims it is to meet. The circuit court should have allowed the plaintiff's counts V and VI to stand. Our holding with regard to counts V and VI is equally applicable to counts VII and VIII, brought against Traveler's Indemnity Company, the surety of C. Iber's performance bond.

The orders of the circuit court of Knox County are reversed and the cause remanded for further proceedings.

Reversed and remanded.

ALLOY and STENGEL, JJ., concur.