MONTREAL THOMPSON *et al.*, Plaintiffs-Appellants, *v.* W. S. HOWARD *et al.*, Defendants-Appellees.

(No. 74-248;

Third District—September 15, 1975.

*Rehearing denied November 26, 1975.*

Cassidy, Cassidy & Mueller, of Peoria (David B. Mueller, of counsel), for appellants.

John Sloan, of Mathis, Sloan & Littler, and Duncan Cooper III, both of Peoria, for appellees.

Mr. JUSTICE STOUDER delivered the opinion of the court:

This appeal arises from the sale of a meat processing or packing plant in Wyoming, Illinois, to the plaintiffs, Montreal and Angeline Thompson.

The plaintiffs have taken this appeal from an order entered by the circuit court of Peoria County, granting the motions of the defendants, W. S. Howard and Joseph V. Toohill, to dismiss the amended complaint. The order made no provision for further amendments; judgment was entered for the defendants against the plaintiffs. The issues raised by this appeal concern the sufficiency of the amended complaint.

In order to treat the issues raised, it is necessary to set forth the background to this litigation.

On November 21, 1968, the plaintiffs, relying upon diversity jurisdiction, filed a complaint in the United States District Court for the Southern District of Illinois against W. S. Howard and Faye E. Howard. The plaintiffs sought damages allegedly resulting from breach of warranty and misrepresentation in connection with a conveyance of real estate from defendants to plaintiffs. Toohill was not made a party defendant in this action.

The federal complaint alleged that on December 2, 1957, Stark Locker Service, as vendor, entered into an "Agreement for Sale of Real Estate" with Joseph V. Toohill and Juanita M. Toohill, as vendee, which among other things provided as follows:

"(13) It is mutually agreed * * * that the covenants and agreements herein contained shall extend to and be obligatory upon the * * * assigns of the respective parties * * * As a part of this agreement vendee agrees to slaughter all of vendor's requirements and shall continue customer pick up service * * * Vendee further agrees not to operate * * * any locker business or do cutting or wrapping for retail food refrigeration trade."

This agreement for sale was executed by a warranty deed, dated December 6, 1957. The deed contained no reference to the covenants and restrictions stated in the agreement. The agreement was not recorded until March 6, 1964.

In 1958, the Toohills allegedly leased the real estate and plant to Wyoming Packing Company which thereafter used the premises as a locker business and for cutting and wrapping in connection with the retail food refrigeration trade.

On June 6, 1960, the Toohills conveyed the real estate and improvements by warranty deed to W. S. Howard and Faye E. Howard. This deed was recorded on July 6, 1960, but made no mention of the restrictive covenant set forth above.

On or about July 8, 1960, the Howards conveyed the property to the Thompsons by statutory warranty deed. The deed was prepared by Toohill, an attorney, who was also the Howards' predecessor in title. Neither the agreement to purchase nor the deed contained any reference

to the restrictive covenant, which at that time remained unrecorded. Furthermore, the Thompsons alleged that although the Howards and their attorney, Toohill, knew of the unrecorded restrictions, it was not disclosed to them in any manner.

In the Federal complaint the Thompsons also alleged that in the course of the negotiations leading up to the sale of the property, W. S. Howard represented the business operations as follows:

"* * * (M)y packing plant, (and) like I told you, I just spent over $25,000 for additional cooler space to expand my retail department. (and) We have a complete slaughtering, processing, retailing, frozen food, cold storage, you name it, we got it here at this plant. (and)

To let you know how much faith I have in the plant, if we can get together, I want to lease the packing plant back for a year, we can discuss the terms later. I would like the exclusive option to repurchase the plant for $60,000."

On March 6, 1964, almost four years after the conveyance to the Thompsons, the 1957 agreement containing the restrictive covenant, was recorded. Thereafter, Stark Locker Service obtained an injunction in the circuit court of Stark County enjoining the lessee, Wyoming Packing Company, from operating any locker business on the premises or doing cutting or wrapping for retail food refrigeration trade.

The Thompsons further alleged that the Howards' failure to disclose the restriction constituted misrepresentation and a breach of one of the warranties contained in the deed. The Thompsons claimed damages of $75,000 through loss of their tenant and inability either to re-lease or sell the premises on a favorable basis.

The Federal district court granted the Howards' motion to dismiss on the ground that the plaintiffs failed to state a claim upon which relief could be granted. In its written decision and order, the court stated as follows:

"The agreement (of December 2, 1957) containing the restrictions was not recorded until long after the conveyance to the plaintiffs. Consequently, the restrictions had no legal effect as a restraint on the plaintiffs' use of the property and no warranty contained in their deed was breached by the defendants even if they had secret knowledge of the provisions of the 1957 agreement between predecessors in title. The plaintiffs clearly have not alleged the necessary elements of an action for fraud and deceit."

The plaintiffs were allowed 20 days within which to file an amended complaint, but no additional pleadings were filed.

On September 9, 1970, the Thompsons filed a complaint in the circuit

court of Peoria County. This complaint named W. S. Howard as a party defendant, but, unlike the Federal complaint, Joseph V. Toohill was also joined as a defendant.

Thereafter, the plaintiffs filed an amended complaint which in many respects parallels the allegations contained in the Federal complaint. It is this amended complaint which forms the basis of the instant appeal.

The plaintiffs alleged that on December 2, 1957, Toohill agreed to purchase the plant from Stark Locker Service for $22,000. The agreement contained the restrictive covenant, previously set forth in connection with the Federal complaint. This transaction closed on December 6, 1957 and contemporaneously Toohill agreed to sell the property to Howard for the same price. Under this agreement, Howard and his wife were to receive title to the plant upon their payment of the total sum of $22,000; $3,000 down and the remaining $19,000 in monthly payments of $350, which payments included interest at 6% per annum. The agreement with Howard contained the same restrictive covenant. Plaintiff alleged further that Howard then leased the property to a corporation, Wyoming Packing Co., Inc., of which he was a major shareholder. All of the principals involved in the corporation were alleged to have actual knowledge of the covenant.

The plaintiffs alleged that during the first half of 1960, Howard negotiated with the Thompsons for the sale of the plant. In the course of these negotiations, Howard allegedly represented the plant to be an unrestricted facility for the slaughter, processing, and sale of livestock and meats. At no time were the plaintiffs informed of the restrictive covenant or of Toohill's interest under the installment contract with Howard.

The complaint alleged that some time prior to June 4, 1960, Toohill, an attorney in Farmington, Illinois, undertook to represent the plaintiffs as well as the defendant, W. S. Howard, and his wife in connection with the sale of the plant. Toward this end Toohill prepared various legal documents to effect the transaction.

On or about July 8, 1960, the agreement prepared by Toohill was executed by the plaintiffs and the defendant. As part of the agreement, Howard leased the plant back for a year. Howard arranged for Wyoming Packing Co., Inc., to pay the rental fee. In addition, Howard was given an option to repurchase the plant for an unspecified price, or to assist the Thompsons in finding a purchaser. Howard elected the latter and in 1961 he arranged a five-year lease between the Thompsons and Wyoming Packing Co., Inc., with a $60,000 purchase option at the end of the term.

The plaintiffs further alleged that the 1957 agreement containing the restrictive covenant was recorded on March 6, 1964. Thereafter, on May 20, 1964, Stark Locker Service filed suit against Wyoming Packing Co.,

Inc. to enforce the covenant. A decree enforcing the covenant was entered on June 8, 1966. The plaintiffs were not made parties to this litigation. The complaint alleges that the plaintiffs first learned of the restrictive covenant on August 4, 1966, when they came to the plant and found it closed.

The plaintiffs alleged that W. S. Howard was guilty of misrepresentation by making false statements and concealing material facts, which acts proximately caused the plaintiffs' damages. Among these acts of misrepresentation, the plaintiffs allege the following: (1) Howard stated that the use and operation of the plant was unrestricted in that it could be used for the slaughter, processing and sale of livestock and meats; (2) Howard failed to disclose the existence of the restrictive covenant; and (3) Howard failed to disclose actual knowledge of the covenant on the part of the Wyoming Packing Co., Inc.

The plaintiffs allege that Joseph V. Toohill was guilty of breach of trust and confidence and misrepresentation by concealing material facts, which acts proximately resulted in plaintiffs' damages. Among these acts of breach of trust and misrepresentation the plaintiffs allege the following: (1) Toohill failed to disclose the existence of the restrictive covenant; (2) Toohill failed to disclose actual knowledge of the covenant by Wyoming Packing Co., Inc.; (3) Toohill failed to explain or see that plaintiffs knew of the existence and significance of the covenant; and (4) Toohill failed to disclose his interest as titleholder of the property together with the interests and involvement of Howard and Wyoming Packing Co., Inc.

Motions to dismiss the amended complaint were filed on behalf of Howard and Toohill. Among the grounds urged in support of this motion were (1) the Federal district court judgment was res judicata of the allegations in the amended complaint and (2) the claim was barred by the statute of limitations.

Initially the trial court denied these motions. The case reached trial on July 9, 1973, and progressed until July 11, 1973, when the plaintiffs sought leave to file an amended complaint. Leave was granted, but, over plaintiffs' objection, a mistrial was declared in order to provide the defendants with "sufficient time to respond thereto." Howard and Toohill responded by motions to dismiss raising the same matter previously denied. The motions were granted and judgment was entered in favor of both Howard and Toohill.

■■ Under the doctrine of res judicata, a final judgment rendered by a court of competent jurisdiction on the merits is conclusive, in the absence of fraud, as to the rights of the parties and their privies and, as to them, constitutes an absolute bar to subsequent action involving the same

claim, demand or cause of action. This doctrine, in all cases where the second suit is upon the same cause of action and between the same parties or their privies as the former action, extends not only to the questions actually litigated and decided but to all other questions which might have been presented. *La Salle National Bank v. County Board of School Trustees*, 23 Ill.App.3d 575, 319 N.E.2d 593.

Where a former adjudication is relied upon as an absolute bar, there must be, as between the two actions, identity of parties, subject matter and causes of action. *American National Bank & Trust Co. v. Zoning Board of Appeals*, 12 Ill.App.3d 794, 299 N.E.2d 147.

The decision of the Federal district court was final, no appeal having been taken from its order. The decision was rendered upon the merits by a court of competent jurisdiction. (*Rinehart v. Locke*, 454 F.2d 313 (7th Cir. 1971).) A comparison of the Federal complaint with the amended complaint in the case at bar reveals that both are predicated upon the same series of transactions and, therefore, involve the same subject matter.

Plaintiffs urge however, that the requirement of identity of causes of action was not met. They argue that res judicata does not apply where, although the factual allegations in both actions are similar, the legal theories differ.

■■ We believe that plaintiffs' contention is without merit. Both actions contained allegations of fraud and misrepresentation. The requirement of identity of causes of action was therefore met.

So far as defendant Howard is concerned, both actions involved the same parties. Accordingly, we hold that the prior adjudication bars the plaintiffs' amended complaint against Howard.

■■ Toohill, however, was not named a party defendant in the Federal complaint. Nor is he in privity with Howard with respect to the allegations of fraud and misrepresentation made here. Therefore, the doctrine of res judicata does not bar the plaintiffs' amended complaint against Toohill.

We must therefore, determine whether the amended complaint against Toohill was barred by the statute of limitations.

The plaintiffs filed their initial complaint in this case on September 9, 1970. The acts of Toohill complained of relate to transactions occurring during June and July of 1960.

The statute of limitations for "all civil actions not otherwise provided for" is five years. (Ill. Rev. Stat., ch. 83, pars. 13, 16.) In *Rozny v. Marnul*, 43 Ill.2d 54, 250 N.E.2d 656, our supreme court construed this phase in section 16 to cover actions for fraud and deceit as well as tortious misrepresentations. The court in *Rozny* also adopted a discovery

rule to determine when the cause of action accrued, thereby triggering the statute. Thus, the cause of action accrued when the plaintiffs knew or should have known of the defendant's error.

In the instant appeal, the plaintiffs alleged that they had no actual knowledge of the restrictive covenant until August 1966, more than six years after purchasing the plant. Therefore, the cause of action accrued in August 1966. Since the original complaint was filed in 1970, the plaintiffs argue that their claim was timely filed. (In this regard, we note that if the plaintiffs' original complaint was timely filed, then the amended complaint was also timely, since it would relate back to the date of the filing of the original complaint. (Ill. Rev. Stat., ch. 110, par. 46(2).) An examination of the pleadings convinces us that the cause of action asserted in the amended complaint grew out of the same transactions or occurrences set up in the original complaint.)

The defendant responds that the statute of limitations began to run from the time the plaintiffs, by reasonable diligence, either knew or should have known of the restrictive covenant. The defendant argues that the plaintiffs had constructive notice of the restriction when the 1957 agreement was recorded on March 6, 1964. It is therefore urged that the plaintiffs could have discovered the restriction in 1964 by exercising due diligence. Since the cause of action accrued in 1964, the defendant argues that the complaint filed in 1970 was barred by the statute of limitations.

Although the restriction was recorded in 1964, the plaintiffs cannot be charged with constructive knowledge of these public records since there was no reason nor occasion to examine them. They urge, in effect, that they cannot be charged with constructive knowledge of a restriction which, at the time of the conveyance to them, was outside their chain of title.

The cases relied on by defendant (*Rosehill Cemetery Co. v. City of Chicago*, 352 Ill. 11, 185 N.E. 170; *Miller v. Akin*, 350 Ill. 186, 182 N.E. 722; *Smith v. Clark*, 248 Ill. 255, 93 N.E. 727) are inapposite since they involved the effect of the recording act as it signifies notice to those with property interests. None of these cases involved the discovery rule as it pertains to the statute of limitations.

■■ We believe that the filing of the restriction in 1964 does not constitute constructive notice to the plaintiffs since the restriction was not in their chain of title. (*Allison v. White*, 285 Ill. 311, 120 N.E. 809.) We therefore hold that the plaintiffs' amended complaint against Toohill was not barred by the statute of limitations.

Accordingly, the judgment of the circuit court of Peoria County entered in favor of W. S. Howard is affirmed. The judgment entered in

998

favor of Joseph V. Toohill is reversed and remanded for further proceedings consistent with this opinion.

Affirmed in part, reversed in part.

STENGEL and BARRY, JJ., concur.