MOORMAN MANUFACTURING COMPANY, Plaintiff-Appellant and Cross-Appellee, *v.* NATIONAL TANK COMPANY *et al.*, Defendants-Appellees and Cross-Appellants.

Fourth District    Nos. 15894, 15973 cons.

Opinion filed December 30, 1980.

GREEN, J., concurring in part and dissenting in part.

Robert W. Cook, of Schmiedeskamp, Robertson, House, Neu & Mitchell, of Quincy, for appellant.

Kent R. Schnack, of Loose & Schnack, and John W. Wooleyhan, of Wooleyhan, Nielson & Adams, both of Quincy, for appellees.

Mr. JUSTICE MILLS delivered the opinion of the court:

We hold that recovery may be had for economic loss under the tort theories of strict liability in tort, negligence, and misrepresentation.

### FACTS

On July 26, 1978, Moorman Manufacturing Company filed a three-count complaint claiming that National Tank Company, a wholly owned

subsidiary of Combustion Engineering, Inc., designed, manufactured and sold various types of storage tanks. In 1966, the defendants manufactured and sold a particular bolted steel grain storage tank to Moorman for use at its feed processing plant in Alpha, Illinois. All three counts alleged that in the last few months of 1976 or the first months of 1977 a crack developed in one of the steel plates on the second ring of the tank.

Count I (sounding in *strict liability in tort*) alleged that the tank was not reasonably safe due to certain design and manufacturing defects. Count II (the *misrepresentation* count) asserted that the defendants had made certain representations, which were in fact untrue, in connection with the sale of the tank. Moorman purportedly relied upon these representations to its detriment. Count III accused the defendants of *negligently* designing the tank.

On October 10, 1978, the defendants filed a motion to dismiss all three counts of the complaint, alleging, *inter alia*, that the cause of action was barred by section 15 of the Limitations Act (Ill. Rev. Stat. 1979, ch. 83, par. 16). Following a hearing on defendants' motion, plaintiff filed an amendment to the complaint, adding count IV, claiming that it had relied upon an *express warranty* made by the defendants at the time of the sale.

In all four counts of the complaint, the plaintiff prayed for damages representing loss of use and cost of repairs and reinforcement of the tank.

On May 15, 1979, the defendants filed an amendment to their motion to dismiss. In this amendment, the defendants claimed that the plaintiff sought only economic loss, which is not available under any tort theory. Additionally, the defendants alleged that count IV was barred by the statute of limitations.

On November 1, 1979, the trial court specifically held that the plaintiff could not recover for purely economic losses under the tort theories advanced by the plaintiff, and that the loss of profits or income and the cost of repair to the tank were economic losses only. The court then dismissed the first three counts. As to count IV, the court found it was not barred by the statute of limitations since an express warranty existed which extended to future performance of the tank.

On motion by the defendants, the trial court entered an order pursuant to Supreme Court Rule 308 (73 Ill. 2d R. 308), finding that an immediate appeal of its denial of the defendants' motion to dismiss count IV would materially advance the ultimate termination of the litigation. The trial court also found, under Supreme Court Rule 304(a) (73 Ill. 2d R. 304(a)), that there was no just reason for delaying enforcement or appeal of its order dismissing the first three counts of the plaintiff's complaint. We granted the appeal, and the appeal was perfected.

On appeal, the plaintiff argues that it should be allowed to recover for economic losses under the tort theories advanced in its complaint. In

addition to contesting this issue, defendants assert that the allegations of count IV (*express warranty*) were insufficient to invoke the future performance exception to the statute of limitations. (Ill. Rev. Stat. 1979, ch. 26, par. 2—725.) The defendants also argue, as an alternative for affirming the trial court's dismissal of the first three counts, that the tort counts were barred by the statute of limitations. Finally, defendants contend that the storage tank in question was not a product ånd that the doctrine of strict liability in tort was therefore inapplicable.

■■ The capstone question in this appeal is the issue of "economic loss." We bite the bullet. We hold that the plaintiff may recover for economic losses under the tort theories of strict liability in tort, negligence, misrepresentation. Additionally, the plaintiff's tort actions were not barred by the statute of limitations, and the storage tank was a product. We therefore reverse the trial court's dismissal of the first three counts.

We first address the issue of the recovery of economic loss in tort and then address the applicability of the statute of limitations to all four counts.

## I
### ECONOMIC LOSS

When a product fails to perform properly, the buyer may incur one or more of three kinds of harm: personal injury, property damage, or economic loss. The term "personal injury" is self-explanatory. Property damage consists of injury to the plaintiff's property other than to the product itself. Economic loss may be either direct or consequential. Direct economic loss occurs when a product damages itself or is unfit for the purpose for which it was sold. Such losses are generally limited to the price of the product. Consequential economic loss consists of an injury extrinsic to the product, such as lost profits or the loss of use of the product. See Note, *Manufacturer's Strict Tort Liability to Consumers for Economic Loss*, 41 St. John's L. Rev. 401 (1967).

As we observed above, the plaintiff's complaint alleges only economic loss—cost of repairs (direct economic loss) and loss of use of the product (consequential economic loss). In dismissing the plaintiff's counts alleging strict liability in tort, negligence, and misrepresentation, the trial court specifically relied upon the Second District's decision in *Alfred N. Koplin & Co. v. Chrysler Corp.* (1977), 49 Ill. App. 3d 194, 364 N.E.2d 100. In that case, the plaintiff alleged negligent manufacture and breach of warranty and sought recovery for its expenses in repairing and replacing air conditioning units manufactured by the defendant. The court said the plaintiff's allegation of solely economic loss placed the case within the "narrow range of situations dividing tort theory from contract theory. * * * The line of demarcation between physical harm and

economic loss in our view reflects the line of demarcation between tort theory and contract theory." (49 Ill. App. 3d 194, 199, 364 N.E.2d 100, 103-04.) The court then proceeded to discuss cases which have divided on the question of whether economic loss should be recoverable in strict liability in tort absent any personal injury or property damage. Although the only tort count before it was the negligence count, the *Koplin* court purported to deny recovery for pure economic loss in any kind of tort action. Thus, the court's discussion is *dictum* as it relates to strict liability in tort and to misrepresentation.

The only other Illinois case facing the issue of recovery for purely economic loss in a tort action appears to be the First District's decision in *Rhodes Pharmacal Co. v. Continental Can Co.* (1966), 72 Ill. App. 2d 362, 219 N.E.2d 726. The plaintiff in *Rhodes* was a marketer of drugs, cosmetics, and hair beauty products. It sought recovery for damages incurred because aerosol cans manufactured by the defendant had leaked. Without explanation, the court merely stated that the case did not meet the requirements for application of the strict liability in tort doctrine. Since the *Rhodes* court did not discuss the many policy issues on each side of the question we now face, that opinion is not persuasive, and we do not feel compelled to follow it. *Wanderer v. Plainfield Carton Corp.* (1976), 40 Ill. App. 3d 552, 351 N.E.2d 630.

## A
### STRICT LIABILITY IN TORT

The debate over whether a cause of action lies in strict liability in tort if the plaintiff is alleging only economic loss began in the mid 1960's. In *Santor v. A. & M. Karagheusian, Inc.* (1965), 44 N.J. 52, 207 A.2d 305, the court which had led the way in attacking the privity requirement in a breach of warranty action (*Henningsen v. Bloomfield Motors, Inc.* (1960), 32 N.J. 358, 161 A.2d 69) again broke new ground. The plaintiff in *Santor* was allowed recovery for loss of the value of carpeting manufactured by the defendants, such loss arising because of unusual indelible lines in the carpeting that became visible soon after installation.

Only a few months after *Santor*, the California court which had pioneered the strict liability in tort doctrine (*Greenman v. Yuba Power Products, Inc.* (1963), 59 Cal. 2d 57, 377 P.2d 897, 27 Cal. Rptr. 697), came to a conclusion contrary to *Santor*. In *Seely v. White Motor Co.* (1965), 63 Cal. 2d 9, 403 P.2d 145, 45 Cal. Rptr. 17, the court, in *dictum*, explained that it would deny recovery under strict liability in tort for economic loss arising from the continuous galloping of a truck manufactured by the defendant.

In the 15 years since *Santor* and *Seely*, courts of other jurisdictions have continued to split on whether purely economic loss is recoverable in

a strict liability in tort action. We find the arguments in favor of recovery to be highly persuasive.

In a strict liability in tort action, we are concerned with the condition and quality of the product. (*Christopherson v. Hyster Co.* (1978), 58 Ill. App. 3d 791, 374 N.E.2d 858.) The right of recovery should not depend upon the nature of the injury or the kind of plaintiff. A manufacturer who has failed to supply a product suitable for the purpose for which it was made and sold should be liable to the buyer who has paid the price that the manufacturer has demanded.

The strict liability in tort doctrine was initially used in cases in which a product had caused personal injury to the plaintiff. (*Greenman.*) The cases following Justice Traynor's *dictum* in *Seely* have required the presence of personal injury or property damage before a plaintiff may proceed under the strict liability in tort doctrine. Section 402A of the Restatement (Second) of Torts (1965) incorporates that limitation, providing in part:

> "One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for *physical harm* thereby caused to the ultimate user or consumer, or to his property * * *." (Emphasis added.)

In States in which section 402A governs actions in strict liability in tort, courts have construed "physical harm" as requiring either personal injury or property damage before a plaintiff may proceed. (*Fredonia Broadcasting Co. v. RCA Corp.* (5th Cir. 1973), 481 F.2d 781; *Hügel v. General Motors Corp.* (Colo. 1975), 544 P.2d 983; *Nobility Homes of Texas, Inc. v. Shivers* (Tex. 1977), 557 S.W.2d 77.) We do not regard section 402A as a barrier to recovery in Illinois for economic loss under the doctrine of strict liability in tort. When our supreme court adopted that doctrine in *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182, it based its result upon views expressed by courts in other jurisdictions and by various commentators. That court has subsequently observed that *Suvada* and section 402A coincide (*Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465) and has sometimes relied heavily upon that provision. (*Cunningham v. MacNeal Memorial Hospital* (1970), 47 Ill. 2d 443, 266 N.E.2d 897.) But, the court has never declared section 402A to be the source or the statement of our strict liability in tort doctrine. In fact, in *Crowe v. Public Building Com.* (1978), 74 Ill. 2d 10, 383 N.E.2d 951, the court refused to be bound by the word "seller" in section 402A and applied the strict liability in tort doctrine to a lessor/defendant. We, as did the court in *Crowe*, decline to be bound by the language the Restatement drafters chose to use. We agree with the *Crowe* decision's approach of fulfilling the policy behind section 402A without being bound by its precise language.

In products liability actions in which the plaintiff has suffered either personal injury or property damage, courts have generally also allowed recovery for economic losses. (See generally *Suvada*; *141 South Main, Inc. v. Magic Fingers, Inc.* (1977), 49 Ill. App. 3d 724, 364 N.E.2d 605; *Hales v. Green Colonial, Inc.* (8th Cir. 1974), 490 F.2d 1015.) To deny recovery for economic loss under strict liability in tort when there is no accompanying personal injury or property damage is an arbitrary distinction leading to opposite results in cases that are virtually indistinguishable. In the instant case, had the plaintiff alleged that a mere bushel of corn had been destroyed by rain water leaking into the tank through the crack, then it would have suffered property damage sufficient to allow recovery of economic loss. Likewise, if an individual had cut his finger while inspecting the crack in the tank, he would have suffered a personal injury allowing recovery for all types of harm.

Justice Peters' dissent in *Seely* pointed to the arbitrary line the majority was drawing. In his example, a traveling salesman who breaks his leg in a car accident caused by a defect in the car can recover, among other things, for economic loss in the form of lost income during his convalescence. But if that same defect merely causes the car to break down without injuring him or damaging his property, then strict liability in tort offers him no relief. We think that a distinction based on such fortuities as these examples suggest is not grounded upon defensible principles.

The *Seely* court justified incongruous results by suggesting that personal injury is more devastating to a plaintiff than mere economic loss so that the availability of the strict liability in tort remedy may properly be made contingent upon injury to the plaintiff. (See also *Price v. Gatlin* (1965), 241 Ore. 315, 405 P.2d 502 (concurring opinion).) But a personal injury is not necessarily a more overwhelming misfortune to a plaintiff than is an economic loss. Surely a custom farmer who buys a new tractor and then goes bankrupt because it will not run during his working season is more seriously harmed than a farmer who is incapacitated for two days from a personal injury caused by the same faulty tractor. A party suffering economic ruin and knocking feebly at the poorhouse door should not be denied the protection of the law simply because he was "fortunate" enough to escape physical injury.

Perhaps in realization of the harshness of the rules which have developed in this area, courts have broadened the property damage exception to encompass certain cases which, in the strictest sense, involve only economic loss. (Note, *Products Liability: Expanding the Property Damage Exception in Pure Economic Loss Cases*, 54 Chi.-Kent L. Rev. 963 (1973).) For example, in *Cloud v. Kit Manufacturing Co.* (Alas. 1977), 563 P.2d 248, the Alaska Supreme Court allowed recovery under strict

liability in tort for a mobile home that had caught fire and burned, allegedly because of a design defect which made it highly flammable. In so holding, the court distinguished a prior decision wherein it denied recovery in strict liability in tort to a plaintiff whose mobile home became uninhabitable a few months after purchase because of a multitude of defects. (*Morrow v. New Moon Homes, Inc.* (Alas. 1976), 548 P.2d 279.) We see no value in trying to draw a line between gradual deterioration (economic loss) and a sudden and calamitous event (property damage), and we fail to see a valid or reasoned distinction supporting the different results in *Morrow* and *Cloud*. Regardless of how the loss was occasioned, in each case the plaintiff sought economic loss—*i.e.*, the value of the defective mobile home.

Efforts to distinguish between property damage and economic loss have sometimes resulted in absurd and unprincipled line drawing and inconsistent results. For example, the harm coming from a faulty herbicide was characterized as economic loss (lost profits from crops) in *Eli Lilly & Co. v. Casey* (Tex. Civ. App. 1971), 472 S.W.2d 598, but as property damage to crops in *Monsanto Co. v. Thrasher* (Tex. Civ. App. 1971), 463 S.W.2d 25, and in *Geigy Chemical Corp. v. Hall* (Tex. Civ. App. 1969), 449 S.W.2d 115. See also *Iancono v. Anderson Concrete Corp.* (1975), 42 Ohio St. 2d 88, 326 N.E.2d 267, wherein the court said the plaintiff had incurred *property damage* when his concrete driveway developed small holes, apparently from the defective nature of the concrete. Under that analysis, it would be difficult to find any distinction between property damage and a direct economic loss.

A further complication arising from efforts to define when property damage has occurred is the question of ingredients or component parts causing damage to the larger product. In *Hiigel v. General Motors Corp.* (Colo. 1975), 544 P.2d 983, the plaintiff sought recovery in strict liability in tort after defective wheel lugs on his mobile home had sheared off, resulting in damage to the chassis. The plaintiff was able to recover for the business losses caused by the breakdown, the rationale being that the plaintiff had incurred property damage. Although the *Hiigel* court's result is commendable, we do not choose to engage in the fiction that a person buying a product has purchased a huge collection of separate products in the form of component parts. We believe it is more realistic to treat a plaintiff as having bought what he intended to buy—a single product. If some part of this product malfunctions to the detriment of the product's value, then the plaintiff should be able to recover without having to make questionable assertions that he has incurred property damage. See Note, *Products Liability: Expanding the Property Damage Exception in Pure Economic Loss Cases*, 54 Chi.-Kent L. Rev. 963 (1978).

In sum, we reject out of hand the hollow distinction that would allow

a buyer to recover the value of an air conditioner in strict liability in tort if it has damaged his premises by leaking (*Admiral Oasis Hotel Corp. v. Home Gas Industries, Inc.* (1965), 68 Ill. App. 2d 297, 216 N.E.2d 282 (a negligence case)), but deny recovery if the air conditioner has failed to cool the premises (*Koplin*). The manner in which a product's failure to perform happens to manifest itself should not be the decisive factor in determining whether a plaintiff has stated a cause of action in strict liability in tort. See Ribstein, *Guidelines for Deciding Product Economic Loss Cases*, 29 Mercer L. Rev. 493 (1978).

When a manufacturer has placed a faulty product into the stream of commerce and the buyer has paid the price demanded, the manufacturer who has reaped a profit is the most appropriate party to bear the loss. Illinois courts have espoused this rationale for the strict liability in tort doctrine. (*Suvada; Evans v. Control Products Corp.* (1979), 73 Ill. App. 3d 681, 392 N.E.2d 239; *Johnson v. Marshall & Huschart Machinery Co.* (1978), 66 Ill. App. 3d 766, 384 N.E.2d 141.) We agree with the courts that say this rationale is just as strong in economic loss cases as it is in cases involving personal injury or property damage. (See *Santor; Cova v. Harley Davidson Motor Co.* (1970), 26 Mich. App. 602, 182 N.W.2d 800; *City of LaCrosse v. Schubert, Schroeder & Associates, Inc.* (1976), 72 Wis. 2d 38, 240 N.W.2d 124.) The manufacturer of a faulty product is in the position to spread the cost of that fault to other buyers or to insure against such cost. Of course, a manufacturer may put into the stream of commerce so many faulty products that it can no longer obtain insurance or must price its goods too high to compete in the marketplace. We cannot, however, see any evil in a rule of law that compels a manufacturer in one way or another to refrain from putting worthless goods onto the market.

In his dissent in *Seely*, Justice Peters suggested the adoption of a consumer-oriented approach whereby only consumers would be able to recover for economic losses in strict liability in tort. One basis for this distinction is the assumption that business purchasers would have cost-spreading abilities. Although concededly some buyers who are in business have the capability of distributing to their customers the cost of a product's failure, we are not persuaded that such buyers should be denied access to the strict liability in tort doctrine. We do not think it would be wise to require our trial courts—at the beginning of all economic loss cases—to determine whether the buyer has a business of adequate size to justify leaving on it the burden of passing to its customers the cost of a faulty product. It is the *manufacturer* who first introduces the item to the marketplace and who is in the best position to see that it is properly designed and constructed. It seems to us that fundamental logic and horseback sense, as well as justice, dictate that the maximum cost-

spreading ability exists at the source of the loss—the manufacturer. The law has degenerated to the level of abject absurdity when it implicitly condones the design, production and distribution of worthless goods.

We are not fearful, as Justice Traynor was in *Seely*, that allowing this kind of suit would subject manufacturers to damages of unknown and unlimited proportions. We would expect that most cases would deal with consumer items—buyers seeking the replacement cost of a "lemon." In most cases, consequential economic losses (such as lost profits) will not occur with consumer buyers. Thus, the manufacturer will have to do no more than give a refund for the product (direct economic loss).

Only when the buyer-plaintiff is a business will there be consequential economic losses. But even then, the manufacturer knows for what purpose his products are sold and can price his products and insure himself accordingly. If the product is somewhat expensive, then a manufacturer is surely on notice that failure of the product could cause significant economic loss to the buyer. On the other hand, if the product is fairly inexpensive, then the buyer's duty to mitigate damages will usually protect a manufacturer from having to pay sizable economic losses. (Of course, a buyer should not be able to recover economic loss when he has put a product to a use not reasonably foreseeable to the manufacturer. *Mata v. Clark Equipment Co.* (1978), 58 Ill. App. 3d 418, 374 N.E.2d 763.)

Several courts denying recovery for only economic losses in strict liability in tort have done so on the ground that all cases involving only economic loss should be decided under the warranty provisions of article 2 of the Uniform Commercial Code (UCC) (Ill. Rev. Stat. 1979, ch. 26, pars. 2—101 to 2—725). (See, *e.g., Morrow v. New Moon Homes, Inc.* (Alas. 1976), 548 P.2d 279; *Hawkins Construction Co. v. Matthews Co.* (1973), 190 Neb. 546, 209 N.W.2d 643; *Nobility Homes of Texas, Inc. v. Shivers* (Tex. 1977), 557 S.W.2d 77.) If a plaintiff must proceed under the UCC rather than under the doctrine of strict liability in tort, he must contend with such Code provisions as section 2—316 (allowing exclusion or modification of the Code's implied warranties), section 2—718 (enforcing reasonable liquidated damages clauses in sales contracts), section 2—719 (allowing a seller to limit the buyer's remedy for consequential damages), and section 2—607 (requiring, as a condition precedent to recovery, that the buyer give notice of a breach of warranty within a reasonable time after the breach is discovered or should have been discovered). Those who would deny the plaintiff recovery contend that the UCC preempts the field on the question of recovery solely for economic loss, especially in light of the legislature's careful balancing of rights between buyers and sellers when it enacted the Code. See Dickerson, *The ABC's of Products Liability—With a Close Look at Section 402A and the Code*, 36 Tenn. L. Rev. 439 (1969).

Those courts holding that the UCC should govern an action seeking only economic losses argue that such an action is a matter of contract law, not a matter of tort law with its strict liability in tort doctrine. (*Koplin; Seely.*) But the UCC should not act as a barrier to recovery by plaintiff seeking only economic losses. We do not believe, as the court in *Koplin* did, that the distinction between tort and contract actions depends upon the nature of the injury a plaintiff has sustained. A strict liability in tort action against a manufacturer is a hybrid, neither tort nor contract. As the *Santor* court said, such an action has "its commencement in contract and its termination in tort." (44 N.J. 52, 64, 207 A.2d 305, 311.) Its nature does not depend upon pigeonholing it according to the kind of harm a plaintiff has incurred. The labeling of a case according to the kind of harm suffered, rather than according to the foundation upon which it rests, often leads to inconsistent results in indistinguishable cases.

The UCC, with its privity requirements, was basically designed for transactions in which the parties are in roughly equal bargaining positions, and the Code functions well in such cases. (See Dickerson.) But "the great mass of the purchasing public has neither adequate knowledge nor sufficient opportunity to determine if articles bought or used are defective. Obviously they must rely upon the skill, care and reputation of the maker." (*Santor*, 44 N.J. 52, 64, 207 A.2d 305, 311.) The Code provisions allowing sellers to exclude or limit warranty recovery can work a considerable hardship on a buyer faced with the same "take-it-or-leave-it" contract from all of his potential sellers. The development of the strict liability in tort doctrine is testimony to the inadequacies of the UCC remedies. (See generally Dickerson.) Given the fact that courts are seemingly reluctant to invoke the good faith (Ill. Rev. Stat. 1979, ch. 26, par. 1—203) and unconscionability (Ill. Rev. Stat. 1979, ch. 26, par. 2—302) provisions of the UCC to protect buyers (see, *e.g., W. L. May Co. v. Philco-Ford Corp.* (1975), 273 Ore. 701, 543 P.2d 283), they can be left with worthless products in spite of having paid a fair price.

In his dissent in *Seely*, Justice Peters thought that consumer buyers in particular should not have to overcome the UCC warranty provisions in an economic loss case. Although consumers need the strict liability in tort doctrine when they seek recovery only for economic losses, limiting recovery to consumers would create more problems than it would resolve. For example, a party could be a consumer as to some products but a nonconsumer as to others. Additionally, the same product could be considered a consumer product in the hands of one purchaser and a nonconsumer product in the hands of another purchaser. We do not wish to impose upon this already complex and confused area of the law yet another difficult ingredient. The courts that have allowed recovery for economic losses under strict liability in tort have not limited recovery to

consumers, and we are not persuaded that such a limitation would be wise.

We do not intend, by our decision today, to belittle the arguments supporting the result reached in *Seely* and cases following that decision. Certainly, there are persuasive arguments indicating that this type of recovery should not be permitted in strict liability in tort. Our holding reflects, instead, a conscious decision that the arguments favoring recovery are *more* persuasive.

■■ As an alternative ground for affirming the trial court's order, the defendants contend that the storage tank that is the subject of this suit is not a "product" and that a cause of action therefore cannot lie under strict liability in tort. Count III of the plaintiff's complaint describes the tank as approximately 113 feet in diameter and 80 feet tall at its highest point. The tank apparently had a capacity of approximately 500,000 bushels of grain.

Illinois courts have said that certain items, under the facts presented, were not products: a condominium (*Heller v. Cadral Corp.* (1980), 84 Ill. App. 3d 677, 406 N.E.2d 88); a shelter care home (*Immergluck v. Ridgeview House, Inc.* (1977), 53 Ill. App. 3d 472, 368 N.E.2d 803); and a multilevel parking garage (*Lowrie v. City of Evanston* (1977), 50 Ill. App. 3d 376, 365 N.E.2d 923). The question of whether something is a product is determined by looking to the policies supporting the strict liability in tort doctrine. We have discussed these policies above—the manufacturer's special responsibility to buyers, the need to protect helpless buyers, and the cost-spreading capacity of the manufacturer. The fact that this plaintiff can proceed under other theories does not weaken the policies supporting the application of the doctrine of strict liability in tort here. The tank in question was placed into the stream of commerce by the defendants, who presumably reaped a benefit from the sale. The mere fact that the tank has apparently become a part of the real estate is not, of itself, sufficient reason to say that it is not a product. (See *Sevilla v. Stearns-Roger, Inc.* (1980), 101 Cal. App. 3d 608, 161 Cal. Rptr. 700.) We hold that the storage tank in this case was a product.

We therefore reverse the trial court's dismissal of count I of the plaintiff's complaint.

## B

### NEGLIGENCE

■■ With the growth of the strict liability in tort doctrine, negligence has been left to the backwaters of products liability law. Traditionally, courts did not allow recovery in negligence for economic losses absent personal injury or property damage. (*Wyatt v. Cadillac Motor Car Division* (1956),

145 Cal. App. 2d 423, 302 P.2d 665; *Trans World Airlines, Inc. v. Curtiss-Wright Corp.* (1955), 1 Misc. 2d 477, 148 N.Y.S.2d 284.) However, even *Wyatt*, a leading case for the proposition that a manufacturer does not have a duty to avoid causing a buyer economic loss, has been limited by subsequent cases. See *Stewart v. Cox* (1961), 55 Cal. 2d 857, 362 P.2d 345, 13 Cal. Rptr. 521, wherein the court said a contractor who built a swimming pool was liable for economic loss caused by the fact that the pool leaked.

In the recent case of *Clark v. International Harvester Co.* (1978), 99 Idaho 326, 581 P.2d 784, the court denied recovery under negligence for a custom farmer's lost income while his tractor, manufactured by the defendant, was being repaired. The court used the same rationale as have courts denying such recovery under strict liability in tort—the UCC's preemption of such cases. We reject, however, that basis for denying recovery under negligence, just as we did under strict liability in tort.

We agree with the courts in *Berg v. General Motors Corp.* (1976), 87 Wash. 2d 584, 555 P.2d 818, and *State ex rel. Western Seed Production Corp. v. Campbell* (1968), 250 Ore. 262, 442 P.2d 215, which held that a buyer's suit in negligence against a manufacturer should be limited, like any other negligence action, only by the factors of proximate cause and foreseeability, not by the kind of harm the plaintiff has incurred. We note that the court in *Berwind Corp. v. Litton Industries, Inc.* (7th Cir. 1976), 532 F.2d 1, applying Illinois law, allowed recovery for negligent manufacture absent either personal injury or property damage. The court did not, however, discuss the fact that some courts do not allow such recovery. Rather, it determined the plaintiff's right to recovery by looking only to foreseeability and proximate cause.

Our analysis under strict liability in tort has already pierced the veil of the contract/tort distinction relied upon by the court in *Koplin*. For the same reasons enunciated above, we hold that the plaintiff in this case can recover for economic loss under its negligence count.

We therefore reverse the trial court's dismissal of count III of the plaintiff's complaint.

## C
### MISREPRESENTATION

In dismissing the plaintiff's misrepresentation count, the trial court relied exclusively upon the decision in *Koplin*. While the *Koplin* opinion purported to deny recovery for economic losses in all tort actions, the only tort theory before the court was negligence. We find that the trial court erred in relying upon the *dictum* in *Koplin*.

Illinois courts have traditionally taken the position that "loss of

bargain" is the measure of damages for misrepresentation. In *Schwitters v. Springer* (1908), 236 Ill. 271, 274, 86 N.E. 102, 103, for example, our supreme court stated:

> "In an action on the case for fraudulent representations in the sale of property the measure of damages is the difference between the value of the property as it is and what it would be worth if the representations had been true."

See also *Posner v. Davis* (1979), 76 Ill. App. 3d 638, 395 N.E.2d 133.

We therefore reverse the trial court's dismissal of count II of the plaintiff's complaint.

## II
### STATUTE OF LIMITATIONS

We now turn to the question of limitation. In its order, the trial court denied defendants' motion to dismiss count IV (warranty) on the basis of the statute of limitations. This question is now presented pursuant to Supreme Court Rule 308 (73 Ill. 2d R. 308). The defendants also argue, as an alternative ground for affirming the trial court's dismissal of counts I, II, and III, that the tort actions were barred by the statute of limitations. We treat the second question first, examining each count independently.

## A
### STRICT LIABILITY IN TORT

The plaintiff's strict liability in tort count was governed by section 15 of the Limitations Act (Ill. Rev. Stat. 1979, ch. 83, par. 16), which provides:

> "Except as provided in Section 2—725 of the 'Uniform Commercial Code', * * * actions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover damages for an injury to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereof, and all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued."

Count I of the plaintiff's complaint alleged that the storage tank was purchased in 1966 and that a crack developed in late 1976 or early 1977. The plaintiff also claimed that the crack was not discovered until the tank was emptied on August 24, 1977. The issue we are faced with is when, under the statute, the cause of action accrued. If it accrued at the time the tank was delivered (1966), then the complaint filed in July of 1978 was clearly beyond the five years of the limitations provision, and the cause of action was barred. If, instead, the cause accrued upon discovery (1977), the action was timely filed.

The defendants concede that a tort cause of action normally accrues, for purposes of the statute of limitations, when all the elements of the cause—duty, breach, and injury—are present. But, it is asserted, that for torts "arising out of contracts," the action accrues when the contract is breached—upon delivery. *West American Insurance Co. v. Sal E. Lobianco & Son Co.* (1977), 69 Ill. 2d 126, 370 N.E.2d 804; *Stevens v. O'Bryant* (1979), 74 Ill. App. 3d 239, 392 N.E.2d 935; *Del Bianco v. American Motorists Insurance Co.* (1979), 73 Ill. App. 3d 743, 392 N.E.2d 120.

In *West American*, two insurance companies brought an action as subrogees of insured/homeowners against contractors who allegedly constructed a fireplace negligently. The complaint was filed in 1974 and asserted that the home was erected sometime prior to January of 1972 when it was destroyed by fire. The defendant masonry contractor filed an affidavit asserting he did not work on the fireplace beyond 1967. The court granted his motion to dismiss on the basis of the statute of limitations. The appellate court reversed the trial court's dismissal, and the supreme court affirmed. The court in reaching its decision declared:

> "It seems well established that a cause of action based on tort accrues only when all elements are present—duty, breach and resulting injury or damage. [Citation.] But '[t]here can be no doubt that a cause of action accrues only when the forces wrongfully put in motion produce injury. Otherwise, in extreme cases, a cause of action might be barred before liability arose.' *Schmidt v. Merchants Despatch Transportation Co.* (1936), 270 N.Y. 287, 300, 200 N.E. 824, 827." (69 Ill. 2d 126, 129-30, 370 N.E.2d 804, 806.)

The court went on to note that a personal injury action arising out of negligence accrues at the time of injury and that a cause of action for a defective product which was negligently made comes into existence only after someone has been injured or damaged. The court thus declared that the cause of action did not accrue until injury or damage had occurred.

In a curious passage of *dictum*, the court went on to state:

> "We recognize a difference in the statute of limitations where the tort arises out of a contractual relationship. There it commences at the time of the breach of duty, not when the damage is sustained. (*Pennsylvania Co. v. Chicago, Milwaukee & St. Paul Ry. Co.* (1893), 144 Ill. 197, 202.) The principal reason is that the breach itself is actionable. This rule encourages the party to act within five years of the breach rather than to delay until damages increase. Here, however, we have no question of privity, or contractual relationship, between the Snellbakers [insured/homeowners] and this defendant." 69 Ill. 2d 126, 132, 370 N.E.2d 804, 807.

In both *Stevens* and *Del Bianco*, the courts applied the rule an-

nounced in the *dictum* in *West American* to hold that the actions were barred. The First District and the Third District went even further and held that the "discovery rule" did not apply to an action to recover for a defective septic tank and for the fraudulent and careless issuance of a certificate of insurance.

■■ We are not persuaded by the defendants' reliance on the *West American* line of cases. We hold that the cause of action based on strict liability in tort accrued at the time the plaintiff first knew or should have known of the defect.

There are a number of reasons for rejecting the defendants' arguments as they relate to this count. Initially, we note that the language in *West American* is *dictum* and that the court there was faced with an action for negligent construction, while we are dealing with an action for strict liability in tort. Additionally, it appears clear that a cause of action in strict liability in tort accrues at the time of injury when the plaintiff has suffered personal injury. (*Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 261 N.E.2d 305.) We see no reason to apply a different rule when the plaintiff's injuries are in the form of property damage or economic loss. The applicability of the statute of limitations should not depend upon the nature of the plaintiff's injury when the same theory of recovery—strict liability in tort—is involved. Finally, the court in *West American* limited the "tort arising out of contract" rule *only* to situations in which there is privity of contract between the plaintiff and the defendant. It would be anomalous if the plaintiff's action in strict liability in tort was barred due to its privity of contract with the defendants since that doctrine was specifically developed to remove the question of privity from consideration.

(We note parenthetically that if this cause of action had accrued after January 1, 1979, the discovery rule might have applied. See Ill. Rev. Stat. 1979, ch. 83, par. 22.2.)

## B
### Misrepresentation

We also reject the defendants' assertion that the misrepresentation count is barred by the statute of limitations. The law is clear in Illinois that a cause of action for misrepresentation does not accrue until the injury is discovered. In *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656, the court concluded that an action for negligent misrepresentation against a surveyor did not accrue until the plaintiff actually knew or should have known of the defendant's error. *Rozny* has since been cited as creating a discovery rule for misrepresentation actions. *Thompson v. Howard* (1975), 32 Ill. App. 3d 991, 337 N.E.2d 94; see also *Knox College v. Celotex Corp.*

(1980), 85 Ill. App. 3d 714, 407 N.E.2d 176; *Gilliland v. Allstate Insurance Co.* (1979), 69 Ill. App. 3d 630, 388 N.E.2d 68.

## C
### NEGLIGENCE

The question of whether the negligence count is barred by the statute of limitations provides additional problems. *Dictum* in the *West American* case indicates that the action accrues upon delivery when the plaintiff and the defendant have privity of contract but upon discovery of the injury in the absence of privity.

The primary purpose of a limitations period is to discourage delay in the bringing of claims and to require the prosecution of a right of action within a reasonable time in order to prevent the loss or impairment of available evidence. (See *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1975), 61 Ill. 2d 129, 334 N.E.2d 160.) In that case, the court was faced with the question of whether a cause of action for malicious or negligent publication accrued on the date of publication or when the plaintiff knew or should have known of the publication. In holding that the discovery rule applied, the court quoted with favor its earlier opinion in *Rozny*:

> " 'The basic problem is one of balancing the increase in difficulty of proof which accompanies the passage of time against the hardship to the plaintiff who neither knows nor should have known of the existence of his right to sue. There are some actions in which the passage of time, from the instant when the facts giving rise to liability occurred, so greatly increases the problems of proof that it has been deemed necessary to bar plaintiffs who had not become aware of their rights of action within the statutory period as measured from the time such facts occurred. [Citations.] But where the passage of time does little to increase the problems of proof, the ends of justice are served by permitting plaintiff to sue within the statutory period computed from the time at which he knew or should have known of the existence of the right to sue. [Citations.] *Rozny v. Marnul*, 43 Ill. 2d 54, 70, 250 N.E.2d 656, 664.' " 61 Ill. 2d 129, 133, 334 N.E.2d 160, 162.

The court in *Olesker* went on to note a number of different types of cases from other jurisdictions which have applied the discovery rule.

The time has come to declare that the discovery rule applies to a cause of action in products liability based upon the negligent manufacture of a product. A number of recent cases which have come to our attention indicate that the courts of our State have gradually been moving in this direction. *Ozark Airlines, Inc. v. Fairchild-Hiller Corp.* (1979), 71 Ill. App.

3d 637, 390 N.E.2d 444; *Chicago & Southern Airlines, Inc. v. Volpar, Inc.* (1977), 54 Ill. App. 3d 609, 370 N.E.2d 54; *Golden Grain Macaroni Co. v. Klefstad Engineering Co.* (1976), 45 Ill. App. 3d 77, 358 N.E.2d 1295; *E. J. Korvette, Division of Spartan Industries, Inc. v. Esko Roofing Co.* (1976), 38 Ill. App. 3d 905, 350 N.E.2d 10; *Society of Mount Carmel v. Fox* (1975), 31 Ill. App. 3d 1060, 355 N.E.2d 588.

We note that the balancing approach suggested in *Rozny* does not necessarily place an undue burden on the defendants. As the court in *Olesker* noted, the purpose of a statute of limitations is certainly not to shield the wrongdoer; rather, it is to discourage the presentation of stale claims and to encourage diligence in the bringing of actions. If it appears clear from the face of the complaint that the plaintiff is filing the action beyond the period for the statute of limitations, the plaintiff must allege facts which indicate that the cause of action was not discovered—or would not have been discovered through the exercise of due diligence— within the limitations period. Thus, in the instant case, the plaintiff was required to show that the defect was not, or could not have been, discovered until sometime after July 27, 1973 (*i.e.*, within 5 years of the filing of the instant complaint on July 28, 1978). See *Auster v. Keck* (1976), 63 Ill. 2d 485, 349 N.E.2d 20; *Chicago Park District v. Kenroy, Inc.* (1978), 58 Ill. App. 3d 879, 374 N.E.2d 670, *modified* (1980), 78 Ill. 2d 555, 402 N.E.2d 181.

The defendants also argue that even if we determine that the discovery rule applies, the allegations of the instant complaint were insufficient under *Auster* and *Kenroy*. We disagree. Among the allegations of the negligence claim were the following:

> "8. In the last few months of 1976, and the first few months of 1977, said bolted steel grain tank was used by plaintiff Moorman Manufacturing Company in Alpha, Illinois, for the storage of corn.
>
> 9. During the months aforesaid, and as a direct and proximate result of one or more of the negligent acts or omissions set out below and in consequence thereof, a crack developed in one of the steel plates on the second ring of such tank; such crack was not discovered by plaintiff, acting in the exercise of reasonable diligence, until such tank was being emptied on or about August 24, 1977.
>
> 10. Following the discovery of such crack plaintiff has learned that such bolted steel grain tank may not be used as intended for the storage of corn without substantial risk of loss of life or of personal injury and large amounts of property damage."

The plaintiff, by these paragraphs, has properly asserted the discovery rule.

## D
### WARRANTY

The final issue we address relates to the trial court's denial of the defendants' motion to dismiss count IV of the complaint on the basis of the statute of limitations. Pursuant to Supreme Court Rule 308 (73 Ill. 2d R. 308) the trial court has presented the following question of law:

> "Does the following express warranty 'explicitly extend to future performance' within the meaning of §2—725(2) of the Uniform Commercial Code (Ill. Rev. Stat. 1977, Ch. 26, §2—725(2)) so as to toll the otherwise long-since-run four (4) year Statute of Limitations of §2—725 of the Uniform Commercial Code (Ill. Rev. Stat. 1977, Ch. 26, Sec. 2—725): 'Tank designed to withstand 60# per bushel grain and 100 m.p.h. winds'?"

The applicable limitations provision states:

> "(1) An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.
>
> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." Ill. Rev. Stat. 1979, ch. 26, par. 2—725.

In *Wilson v. Massey-Ferguson, Inc.* (1974), 21 Ill. App. 3d 867, 315 N.E.2d 580, this court held that a warranty must explicitly guarantee future performance of a product to come within the future performance exception. There, the plaintiff's cause of action for damages under an implied warranty of merchantability was barred by the four-year statute of limitations of section 2—725. We found the future performance exception inapplicable since the future performance of the farm tractor in question had not been *explicitly* guaranteed. We stated that merely because it is reasonable to expect that a warranty of merchantability will extend for the life of a product, it does not follow that such a warranty extends to future performance. We concluded by stating:

> "We find nothing in the record, nor in the transcript of the evidence which would support an inference that any explicit warranty or representation as to the performance of the tractor was made, let alone representations, explicit or otherwise, as to the

future performance of the tractor." 21 Ill. App. 3d 867, 872, 315 N.E.2d 580, 584.

Under the authority of *Wilson* our response to the rather narrow question presented by the trial court in this case is no.

We note, however, that in its warranty count, the plaintiff made the following allegations:

"8. As a part of such contract Defendants made the following express warranty in words as follows: 'Tank designed to withstand 60# per bushel grain and 100 m.p.h. winds.'

9. In purchasing said bolted steel grain tank Plaintiff relied on the skill and judgment of Defendants and on Defendants' express warranty described above.

10. Said warranty explicitly extended to performance of the goods from time to time after their delivery and discovery of the breach was not reasonably possible until the time of such performance."

In denying the defendants' motion to dismiss, the trial court stated that it was "obvious" that the warranty extended to future performance of the tank and that the cause of action was not barred by the statute of limitations. In presenting the question for appeal, however, the trial court asked only whether the warranty set forth in paragraph 8 of the complaint, by itself, explicitly extended to future performance.

There is little doubt that the plaintiff here was attempting to frame his complaint so as to utilize the future performance exception. Although the plaintiff is required to plead facts in his complaint (see, *e.g.*, *Midwest Television, Inc. v. Champaign-Urbana Communications, Inc.* (1976), 37 Ill. App. 3d 926, 347 N.E.2d 34), the purpose of the complaint is to provide notice to the opposing party of the cause being pursued. (Ill. Rev. Stat. 1979, ch. 110, par. 42(2).) We are not called upon here to judge the sufficiency of the plaintiff's allegations of count IV under the liberal pleading rules in Illinois (Ill. Rev. Stat. 1979, ch. 110, par. 33(3)), and our holding today is so limited.

The trial court's dismissal of counts I, II, and III of the plaintiff's complaint is hereby reversed.

Reversed and remanded.

CRAVEN, J., concurs.

Mr. JUSTICE GREEN, concurring in part, and dissenting in part:

I would affirm the trial court's dismissal of count I alleging strict liability for defective product and reverse the trial court's (1) dismissal of count II charging misrepresentation and count III claiming negligence,

and (2) denial of the motion to dismiss count IV charging breach of express warranty.

I do not agree that economic damages are or should be recoverable in this State for the strict liability tort of defective product absent injury or property damage. The tort places liability without fault upon the tortfeasor, focusing not upon his conduct but·upon the defect in the product which has been placed in commerce. (*Kerns v. Engelke* (1979), 76 Ill. 2d 154, 390 N.E.2d 859.) The essence of the tort is the unreasonable danger created by the defect and placed upon those to whom a duty is owed. (*Hunt v. Blasius* (1978), 74 Ill. 2d 203, 384 N.E.2d 368.) The supreme court has made clear that an unreasonably dangerous condition of the product is an essential element of the tort. *Dunham v. Vaughan & Bushnell Mfg. Co.* (1969), 42 Ill. 2d 339, 247 N.E.2d 401; *Hunt.*

On the other hand, in *Santor v. A. & M. Karagheusian, Inc.* (1965), 44 N.J. 52, 207 A.2d 305, the New Jersey court proclaimed a tort action for defective product which, unlike the Illinois remedy, made no requirement that the defective product be unreasonably dangerous. The supreme court has never ruled upon whether economic damages are recoverable in an action in strict liability for defective product but the differences between the New Jersey and Illinois remedies indicate differences in treatment. The unreasonably dangerous nature of the product bears particularly upon the likelihood of personal injury and to some extent upon that of property damage. It has little relevance to the likelihood of economic damage when neither personal injury nor property damage are involved.

Borrowing in part from an illustration used by the majority, let us assume the existence of two custom farmers who have bought tractors that fail to perform during their working season, causing neither personal injury nor property damage but causing both a substantially equal loss of business. If one of the tractors had an unreasonably dangerous defect but the other's defect was not so dangerous, and neither defect was caused by negligence, under the holding of the majority, the first farmer would have a cause of action in defective product but the second would be relegated to the remedies of the Uniform Commercial Code. As the majority has stated, drawing boundary lines that define when various measures of damages arise is often difficult. I deem it logical here to draw the line where the majority of cases have done. I agree with Mr. Justice Traynor that when no personal injury or property damage has occurred, the Uniform Commercial Code provides the appropriate vehicle for relief for economic damage arising from a defective product not shown to have been negligently produced.

I do not consider the provisions of the Code to be unreasonable to consumers but if they are, it should be amended with the amendments

applicable to all suits for breach of the implied warranty of fitness, rather than as here, creating an exception applicable only in those situations where, although no personal injuries or property damages resulted, fortuitously, the defect was unreasonably dangerous.

The majority indicates that the most substantial cases, under the rule it sets forth, would be those between business entities. Those would be the cases where the freedom to contract permitted by the Uniform Commercial Code would be the most desirable.

I agree with the majority's disposition of count II charging misrepresentation. Economic damages are recoverable under that claim, and the statute of limitations did not begin to run until plaintiff knew or should have known of the alleged error in the representation.

I also agree with the majority's disposition of count III claiming negligence. Under this count the defendant would not be held liable without fault. The remedy is not based upon the product being dangerous. Thus there is no logical reason to limit recovery for economic damages where there is damage to person or property. I agree that if one owing a duty to another negligently inflicts reasonably foreseeable economic loss upon the other, the negligent actor should be liable. Here the manufacturer-seller and buyer relationship created the duty. I would reject the dictum of *West American Insurance Co. v. Sal E. Lobianco & Son Co.* (1977), 69 Ill. 2d 126, 370 N.E.2d 804. The alleged tort did not occur until the injury to the tank occurred. We need not decide whether the discovery rule was applicable because there is no showing of record that the suit was not brought within two years of the crack having developed.

I do not agree with the majority's interpretation of count IV. I interpret the count to rely entirely on the warranty set forth in its paragraph 8. As the majority correctly rules, it did not "explicitly extend to future performance." The count showed on its face that it was barred by the statute of limitations. The motion to dismiss count IV should have been allowed.

Accordingly, I concur in the majority's reversal of the trial court's dismissal of counts II and III. I dissent from (1) the majority's reversal of the dismissal of count I, and (2) the majority's affirmance of the trial court's denial of the motion to dismiss count IV.